**Norman SHAMBERG and Samuel Katz, Executors of the Estate of Martin Shamberg, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**Timothy P. AHLSTROM, F. Morgan Lamarche, Robert G. Kitchell, William A. Angus, III, Graham Humes, James E. Palmer, Avant-Garde Computing, Inc., North American Corporation, Nationwide Corp., CJL Investment Co., Lorin J. Silverman, Kidder Peabody & Co., and Hambrecht & Quist, Inc., Defendants.**

Civ. A. No. 85–4149(SSB).

United States District Court,
D. New Jersey.

Sept. 10, 1986.

Skadden, Arps, Meagher & Flom by Stephen J. Rothschild, Wilmington, Del., Schnader, Harrison, Segal & Lewis by Bancroft D. Haviland, Philadelphia, Pa., Brown, Connery, Kulp, Wille, Purnell & Greene by Thomas McBride, Camden, N.J., for defendants Kitchell, Avante-Garde Computing, Inc., Ahlstrom, LaMarche, Angus, Humes and Palmer.

Patterson, Belknap, Webb & Tyler by Michael B. Mukasey, New York City, Hannoch & Weisman by Albert G. Besser, Roseland, N.J., for defendants Nationwide Corp., CJL Investment Co., North American Corp., and Silverman.

Barrack, Rodos & Bacine by Leonard Barrack, Philadelphia, Pa., John G. Narkin, Cherry Hill, N.J., Wolf, Block, Schorr and Solis-Cohen by Barry F. Schwartz, Andrew A. Chirls, Philadelphia, Pa., Thomas F. Bullock, Milmay, N.J., for plaintiffs.

## OPINION

BROTMAN, District Judge:

Plaintiffs Norman Shamberg and Samuel Katz, as executors of the estate of Martin Shamberg, allege that the defendants violated the federal securities laws in connection with the initial public offering of common stock of Avant-Garde Computing, Inc. and in connection with Avant-Garde's subsequent issuance and dissemination of allegedly materially false and misleading information. Jurisdiction is based on 28 U.S.C. § 1331; section 22 of the Securities Act of 1933, 15 U.S.C. § 77; and section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

Presently before the court is plaintiffs' motion for certification to proceed as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The court heard oral argument on this motion on March 4, 1986. For the reasons set forth below, the court will grant plaintiffs' motion for class certification.

## I. Factual Background

Plaintiffs bring this action against three groups of defendants: (1) Avant-Garde and certain of its officers and directors; * (2) Kidder Peabody & Co. and Hambrecht & Quist, Inc., the lead underwriters of Avant-Garde's June 30, 1983 initial public offering; and (3) a group of related corporations and individuals, referred to as the "North American defendants." The North American defendants include North American Corporation ("NAC"), Nationwide Corporation, CJL Investment Company, and Lorin J. Silverman. At the time of the initial public offering, the North American defendants owned more than 51 percent of the shares of Avant-Garde, all of which were sold in the public offering.

Avant-Garde is a New Jersey corporation founded in 1978. Its business primarily involves developing and selling software-based systems for use in the operation of large data communications networks. Since the company went public on June 30, 1983, its common stock has traded in the over-the-counter market. In the complaint, plaintiffs contend that investors were misled by two types of alleged misinformation in the prospectus and later public statements.

First, plaintiffs contend that certain transactions between Avant-Garde and NAC should have been characterized as leases rather than sales under generally accepted accounting principles and that by stating those transactions as sales, the company falsely inflated its earnings so as to mislead investors. Second, plaintiffs contend that defendants failed to disclose that the company had operational shortcomings and that public statements painted a glowing but false portrait of a growing, successful high-tech company.

The complaint alleges violations of sections 11 and 12(2) of the Securities Act, 15 U.S.C. §§ 77k, 77l(2); section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b-5. Avant-Garde's common stock sold at $16.00 per share in the initial public offering and rose to a high of $28.75. At June 30, 1986, three years after the public offering, its value had dropped to $4.50 per share.

Plaintiffs' decedent, Martin Shamberg, purchased 200 shares of Avant-Garde's common stock from defendant Kidder, Pea-

---

* Avant-Garde's officers and directors named as defendants are Timothy P. Ahlstrom, F. Morgan Lamarche, Robert G. Kitchell, William A. An-

gus, III, Graham Humes and James E. Palmer. They, along with Avant-Garde itself, oppose plaintiffs' motion for class certification.

body in the initial public offering. Martin Shamberg died shortly thereafter, on August 20, 1983. Under his will, plaintiffs Norman Shamberg (Martin's brother) and Samuel Katz (his friend and business associate) became executors of his estate. Neither plaintiff knew why Martin Shamberg bought the Avant-Garde stock.

The attorney for Martin Shamberg's estate is David R. Glyn of the law firm Wolf Block Schorr and Solis-Cohen. Glyn Affidavit, ¶ 1. Members of that firm wrote the will and in 1973, one Wolf Block partner was named an alternate executor. Both the decedent and the plaintiffs have had long-standing business and personal relationships with Wolf Block. *Id.*, ¶¶ 2, 3. While working on estate-related matters, Glyn realized that plaintiffs had a possible cause of action for securities law volations in connection with Martin Shamberg's purchase of Avant-Garde stock. *Id.*, ¶ 4. He and other members of the firm advised the executors of that possibility "and of the advantages, consequences, risks and benefits of pursing the claim either as class representatives or otherwise." *Id.* The executors made a joint decision to proceed and reviewed the complaint before it was filed. *Id.*

Plaintiffs and their counsel have a contingent fee arrangement and the lawyers are advancing costs. (Tr. 17–21, 47). Plaintiffs intend to wind up the estate by the end of 1986. If this action is not resolved by then, the pending claims will be assumed by four testamentary trusts. Martin Shamberg's will designates the plaintiffs as trustees for those trusts as well as executors of the estate.

## II. Discussion

Plaintiffs seek to certify a class of all persons who purchased Avant-Garde's common stock between June 30, 1983 and July 29, 1985 (the "Class Period"). Plaintiffs ask the court to certify Count I (section 11 of the Securities Act) and Count III (section 10(b) of the 1934 Act) to proceed as to the entire class. They seek to certify a subclass with respect to Count II (section 12(2)

of the Securities Act). The subclass is defined as all persons who purchased Avant-Garde's common stock directly from Kidder, Peabody or Hambrecht & Quist, the lead underwriter defendants. Excluded from the proposed class and subclass are the defendants, members of their immediate families, any entity in which any defendant has a controlling interest, and the defendants' legal representatives, heirs, successors or assigns.

### A. Rule 23(a)

Rule 23(a), Fed.R.Civ.P., lists four prerequisites to a class action:

> (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Defendants charge that plaintiffs are atypical and inadequate class representatives, but do not allege that plaintiffs fail to satisfy the numerosity and commonality requirements.

### 1. Adequacy

 Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Both the named plaintiffs and their attorneys must show that they "will competently, responsibly and vigorously prosecute the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Lewis v. Goldsmith*, 95 F.R.D. 15, 19 (D.N.J.1982). In evaluating adequacy, the Third Circuit considers (1) whether the named plaintiffs have interests antagonistic to those of the class and (2) whether plaintiffs' counsel is qualified to conduct the proposed litigation. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *In Re Data Access Systems*, 103 F.R.D. 130, 140

(D.N.J.1984). The burden is on the defendants to prove that plaintiffs' representation will be inadequate. *Data Access, supra, citing Lewis v. Curtis,* 671 F.2d 779, 788–89 (3d Cir.), *cert. denied* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

Defendants contend that because plaintiffs are executors of Martin Shamberg's estate, their interests are antagonistic to those of the class. Plaintiff Katz testified in his deposition that plaintiffs intend to distribute the estate's assets by the end of 1986. Tr. 26. Defendants argue that such distribution conflicts with the class interest in pursuing the litigation. They clair that because plaintiffs are not beneficiaries under the will, they will have no interest in the Avant-Garde stock once distribution is completed. In addition, defendants contend that after full distribution the estate will have no funds to pay the costs of this litigation if the estate is ultimately responsible. Defendants also argue that conflict is inevitable even if plaintiffs do not wind up the estate this year. They claim that if plaintiffs set aside estate funds and tie up estate assets for costs until this litigation concludes, they will invite claims of waste against the estate since costs could easily exceed the estate's $3,200 investment in Avant-Garde stock.

Defendants challenge plaintiffs' adequacy on the additional ground that plaintiff merely "acquiesced" to their attorneys' recommendation to file suit and that plaintiffs have not demonstrated a willingness or ability to pay the ultimate costs of litigation. In essence, defendants charge that plaintiffs' counsel are left with absolute control over the litigation.

### a. Plaintiffs' Position as Executors

Martin Shamberg's will and its codicils provide that once administration of the estate terminates, all principal assets of the estate will be distributed to separate trusts for the benefit of Martin Shamberg's four children. Each child's trust will continue until he or she reaches the age of forty-five. The oldest child, Michael Shamberg, is now thirty-five years old, so the trusts will continue until beyond 1986. Affidavit of David R. Glyn, February 20, 1986. Plaintiffs Norman Shamberg and Samuel Katz are named in the will's first codicil as trustees of the Shamberg children's trusts. *Id.*

Plaintiffs contend that because the trusts are apparent successors-in-interest to the estate, the likely liquidation of the estate before the end of 1986 does not diminish plaintiffs' adequacy. They rely on *Wellman v. Dickinson,* 79 F.R.D. 341 (S.D.N.Y. 1978), in which the defendants argued that one of the proposed class representatives, Jay-Gro Fabrics, Inc. Pension Trust, would be unable to prosecute the class action vigorously because the trust was likely to terminate in a short time. The court rejected this argument because the trust had only one beneficiary which, as the real party in interest, could be substituted for the trust in the event of the trust's demise *pendent lite.*

Plaintiffs also rely on *Clark v. Cameron-Brown Co.,* 72 F.R.D. 48 (M.D.N.C. 1976), for the proposition that an executor is an adequate class representative. In *Clark,* the executor filed a securities class action where the estate's investment in the company's stock totaled $3,200, coincidentally the same figure at issue here. Defendants challenged plaintiffs' adequacy: in addition to being the estate's executor and the putative class representative, he was a residual beneficiary under the will as well as plaintiff's lead counsel. The *Clark* court held that despite his many hats, plaintiff would adequately represent the class. 72 F.R.D. at 54, 55. Significantly, in *Clark* there were two additional named plaintiffs who as class representatives would also have to approve any settlement. Their presence provided an important check on the third plaintiff's potential conflicts of interest.

In the instant case, the only named plaintiffs are the executors and future trustees. Plaintiffs argue, however, that as fiduciaries unfettered by any apparent conflict of interest, they are permitted by state law to pursue this action.

■ In New Jersey, a fiduciary has the power to " ... contest ... any claim in favor of the estate ...," N.J.S.A. 3B:14–23(m), and to " ... employ and compensate attorneys ...," N.J.S.A. 3B:14–23(*l*), for that purpose. The executors are also empowered to exercise powers granted in the will, N.J.S.A. 3B:14–23(w), such as to "prosecute all causes of action." As executors and future trustees, these plaintiffs have a fiduciary duty to the estate and to the testamentary trust. Whether to proceed with a cause of action like the one in dispute lies within their sole discretion. *See State Teachers Retirement Board v. Fluor Corp.*, 73 F.R.D. 569 (S.D.N.Y.1976); *Clark v. Cameron Brown Co., supra.*

### b. Paying the Costs of Litigation

■ Defendants also challenge plaintiffs' adequacy because plaintiffs' counsel are advancing the costs of litigation. So long as plaintiffs have found someone to advance costs, it is not relevant whether plaintiffs themselves or the decedent's estate has sufficient resources to fund the litigation. In determining that a derivative plaintiff could proceed under Fed.R.Civ.P. 23.1 although a non-party had agreed to indemnify plaintiff for the costs of litigation, the Third Circuit announced its attitude toward this issue.

It is not uncommon in class actions to have persons other than the named plaintiff pay the costs of the litigation. This is especially true in cases involving indigent class plaintiffs and human rights issues. Indeed, attorneys' fees are sometimes even paid indirectly by the government through grants to public interest law firms. We do not see why class plaintiffs in corporate derivative actions must be obliged to pay the litigation costs out of their own pockets when class plaintiffs in other class actions do not have the same obligation. When functioning as class plaintiffs in the federal courts the rich are entitled to the same privileges as the poor.

*Vanderbilt v. Geo-Energy, Ltd.*, 725 F.2d 204, 210 (3d Cir.1983).

Commenting on the *Vanderbilt* court's rationale, Magistrate Simandle of this court has observed that

Although the court did not address the situation in which class counsel advanced the costs of litigation, the same logic would govern this situation. The viability of the funding of the litigation is the primary concern in assessing adequacy from the financial standpoint. The financial burden to be borne by the class representative himself, as the Third Circuit has noted, is of very little concern as regards his adequacy.

*Ferraro v. General Motors Corp.*, 105 F.R.D. 429, 434 n. 4 (D.N.J.1984).

There is no requirement in New Jersey which holds a client to be ultimately liable for expenses and costs of litigation advanced by counsel. *See* Rule 1.8(e)(1) of New Jersey's Rules of Professional Conduct, adopted in this court by Rule 6 of the General Rules of the United States District Court for the District of New Jersey. *Cf.* DR 5–103(B); *Selby v. Brown*, 437 A.2d 767 (Pa.Super.1981) (Pennsylvania attorney may advance costs as long as client retains ultimate liability). An attorney from another jurisdiction appearing in New Jersey's state or federal courts is bound by the ethical precepts and rules generally applicable in those courts. *Elder v. Metropolitan Freight Carriers, Inc.*, 543 F.2d 513 (3d Cir.1976); *Donaghy v. Napoleon*, 543 F.Supp. 112, 113 (D.N.J.1982) (Brotman, J.).

To preclude these plaintiffs from pursuing this case as a class action merely because their attorneys are advancing costs would contravene "the very purposes which class actions were designed to achieve." *Sayre v. Abraham Lincoln Federal Savings & Loan Association*, 65 F.R.D. 379, 385 (E.D.Pa.1974).

Nothing about plaintiffs' status as executors or as trustees of the trusts which will succeed to the estate's interest on winding up prevents them from adequately and vigorously prosecuting this litigation on behalf of the class. Furthermore, the present contingent fee arrangement between plain-

tiffs and their counsel is ethically proper and wholly acceptable.

### c. Vigorous Prosecution

■ Defendants insinuate that plaintiffs are improper class representatives because their attorneys were the "moving force behind this lawsuit," Defendants' Brief at 21, and because they are not fully familiar with the facts underlying this litigation. A plaintiff need not have complete knowledge of a case to be an adequate class representative. Indeed, he may even "[display] a complete ignorance of the facts concerning the transaction that he was challenging." *Data Access, supra,* 103 F.R.D. at 140, *citing Lewis v. Curtis, supra,* 671 F.2d at 788–89. Plaintiffs' knowledge about the transactions detailed in the complaint has no bearing on their adequacy under Rule 23(a)(4). *Id.; see also Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Defendants do not challenge the skill and competence of plaintiffs' counsel, which is concededly relevant.

It was perfectly appropriate for Wolf Block, as counsel to Martin Shamberg's estate, to alert the executors to the existence of claims asserted in this case.

> [L]awyers have been and should continue to be permitted to make personal contact ... if the prospective client is a close friend, relative, former client or one whom the lawyer reasonably believes to be a client....

Comment to New Jersey Rule of Professional Conduct 7.3.

■ Accordingly, the court finds that plaintiffs Katz and Norman Shamberg are adequate class representatives under Fed. R.Civ.P. 23(a)(4).

### 2. Typicality

■ To ensure that representative class plaintiffs are motivated to pursue the best interests of the class, Rule 23(a)(3) requires that their claims be "typical... of the claims of the class." A plaintiff's claims are typical if they arise from the "same event or course of conduct which in turn had given rise to the claims of other class members." *Data Access, supra,* 103 F.R.D. at 139. In many ways, the typicality requirement "overlaps the requirements that the named representatives adequately represent the class, that there be common questions of law and fact, that such questions predominate, and that the class action be a superior means of resolution." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985), *citing* H. Newberg, 1 *Newberg on Class Actions,* 1115a (1977) *and* 3B *Moore's Federal Practice,* 23.06–2 (1985). To establish typicality, the court must inquire whether " 'the named plaintiff's individual circumstances are markedly different or... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.' " *Eisenberg v. Gagnon, supra,* 766 F.2d at 786, *citing Weiss v. New York Hospital,* 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Fundamentally, plaintiff's interest may not be "antagonistic to those of the class," *Mersay v. First Republic Corporation,* 43 F.R.D. 465, 468–69 (S.D.N.Y.1968), and the claims must arise from a "common nucleus of operative fact." *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 344 (N.D.Ill.1978), *citing* 3B *Moore's Federal Practice,* 23.06–2 (2d ed. 1972).

Plaintiffs here contend that the complaint alleges that defendants engaged in a common course of fraudulent conduct to conceal Avant-Garde's poor revenues, earnings, management, products, markets, financial condition and business prospects from the unsuspecting investing public. Defendants characterize the complaint as raising two distinct sets of claims: first, those which attack the prospectus, the initial public offering, and the sale accounting treatment of certain transactions between Avant-Garde and NAC; and second, those which attack public reports and statements issued after the prospectus.

Defendants cleverly attempt to sever the accounting change from the alleged material misrepresentations and nondisclosures

696

which followed. That draws too fine a distinction. Defendants cannot dispute that Martin Silverman, NAC's president, wanted "OUT–out" of NAC's substantial investment in Avant-Garde because NAC was "scared". Memo to File, G. Humes, April 15, 1983 (Exhibit F to Plaintiffs' Reply Brief); Letter, M. Silverman to T. Ahlstrom, August 3, 1982 (Exhibit A to Plaintiffs' Reply Brief).

Defendants admit that the change in accounting treatment (from "leases" to "sales") of the NAC–Avant-Garde transactions was necessary to make the public offering possible. Documents obtained by plaintiffs through discovery strongly suggest that Silverman and others at NAC were pressuring Avant-Garde to go public, perhaps before it was ready, so that they could recoup their investment and withdraw. The relevance of the undisclosed change in accountants (from Arthur Andersen & Co. to Ernst & Whinney) and accounting treatments (from leases to sales) is best expressed in plaintiffs' contention that Avant-Garde's reportable net income in 1982 would have been $10,292 instead of $486,690 had the change not been made. Plaintiffs' Reply Brief at 6; Exhibit H.

█ The complaint alleges that the "fraudulent accounting scheme" was the first step in a long series of material misrepresentations and nondisclosures. Paragraphs 36–50 describe the accounting scheme itself. In paragraph 51, plaintiffs allege that these facts went undisclosed both in connection with and after the initial public offering. In subparagraphs 69(a) through 69(g), plaintiffs allege that all of the statements during the class period were false and misleading because they failed to disclose that the critical accounting change took place and that it was "cooked up" in order to facilitate the public offering of a company whose performances and potential had thus far disappointed its investors. Defendants' failure to disclose allegedly significant shortcomings of Avant-Garde's products, management, prospects, earnings and revenues can also be said to be part of a "common course of conduct." *See* subparagraphs 69(h)-(s). Each count of the complaint incorporates all of these allegations about related fraudulent misrepresentations and omissions. ¶ 72, 80, 86. In addition, the complaint describes each quarterly earnings report or other statement issued during the class period and alleges that those statements were tainted with misrepresentations and nondisclosures. ¶¶ 51–64.

Despite defendants' arguments to the contrary, there is considerable authority allowing class plaintiffs to represent later purchasers.

Defendants in securities class actions have often argued that a plaintiff's claim cannot be typical of the claims of class members who purchased at different times in reliance on different documents. It is now settled, however, that the claims of such a plaintiff are typical of the claims of the class if all of the documents relied upon are part of a common scheme to defraud.

4 *Newberg on Class Actions*, § 22.13 at 34 (2d ed. 1985). *See also Data Access, supra,* 103 F.R.D. at 145–48; *Hochschuler v. G.D. Searle, supra,* 82 F.R.D. at 347–48 n. 14; *Lewis v. Capital Mortgage Investments,* 78 F.R.D. 295, 301–02 (D.Md.1977). Other cases have determined that a representative's date of purchase need not determine the outer boundary of the class. *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir.1968), *cert. denied* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Piel v. National Semiconductor Corp.,* 86 F.R.D. 357, 370 (E.D.Pa.1980); *Muth v. Dechert, Price & Rhoads,* 70 F.R.D. 602 (E.D.Pa. 1976).

The court believes that *Simon v. Westinghouse,* 73 F.R.D. 480 (E.D.Pa.1977), on which defendants rely heavily, is distinguishable from the case at bar. In *Simon,* plaintiffs contended that the defendant's misrepresentations of its uranium supply contracts and improper foreign payments, and nondisclosures of business losses and decreased orders were part of a conspiracy intended to cause investors to purchase Westinghouse securities at inflated prices.

73 F.R.D. at 483. The *Simon* court observed:

> Some courts have indicated that a claimant can be a class representative in a securities case if he purchased securities at any time in the proposed class period. *See In re United States Financial Securities Litigation,* 69 F.R.D. 24, 38 (S.D. Cal.1975); *Aboudi v. Daroff,* 65 F.R.D. 388 (S.D.N.Y.1974). Such a rule would perhaps be appropriate where the complaint alleges a single misrepresentation or repetitions of the same misrepresentation. In such a case, the facts necessary to prove the named plaintiff's claim generally would be sufficient to prove the claim of other class members. In this case, however, in addition to allegations of conspiracy, the plaintiffs allege a whole series of nondisclosures and misrepresentations arising at various times and concerning various aspects of Westinghouse's business.

73 F.R.D. at 485. The *Simon* court concluded that the plaintiffs had little interest in demonstrating the defendant's duty to disclose after the date of their own purchases. *Id.* This case is different. The complaint alleges "specific strands of misrepresentations running throughout financial statements of the class period," *Blackie v. Barrack,* 524 F.2d 891, 903 n. 19 (9th Cir.1975), *cert. denied* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), which are sufficient to show a "common course of conduct." *Id.*

Other cases on which defendants rely are similarly distinguishable. For example, the class in *Elkind v. Liggett & Myers, Inc.,* 66 F.R.D. 36 (S.D.N.Y.1975), was ultimately certified, 77 F.R.D. 708, 712 (S.D.N.Y.1977). In *Fruchthandler v. Blakely,* 73 F.R.D. 318, 321 (S.D.N.Y.1976), the plaintiff sought to represent subsequent purchasers after partial disclosure of the fraud. Here, plaintiffs seek to represent persons who purchased prior to disclosure. *See Hochschuler v. G.D. Searle, supra,* 82 F.R.D. at 347, 348 n. 14.

In short, plaintiffs have alleged that the defendants' acts and omissions were pursuant to a "common course of conduct" as required by a long line of precedent. *E.g., Blackie v. Barrack, supra,* 524 F.2d 891; *Green v. Wolf Corp., supra,* 406 F.2d 291; *Data Access, supra,* 103 F.R.D. 130. There is no apparent antagonism between plaintiffs' claims and those of other prospective class members. Accordingly, plaintiffs' claims are sufficiently typical to satisfy Rule 23(a)(3).

### a. Reliance

■ Defendants contend that plaintiffs' claims are not typical for an additional reason: plaintiffs cannot demonstrate that the decedent relied on allegedly misleading public statements when he purchased Avant-Garde stock. Recently, the Third Circuit held that it was an abuse of discretion to deny class certification because individual questions of reliance existed. *Eisenberg v. Gagnon, supra,* 766 F.2d at 786. This court has previously held that even if plaintiffs relied on different pieces of information, the separate issues of reliance did not render plaintiffs' claims atypical for four reasons. *Data Access, supra,* 103 F.R.D. at 139–40. First, the *Data Access* plaintiffs' claims arose from a common course of conduct. *Id.* Second, differing types of reliance are present in almost every securities class action. To deny class certification on this basis alone would stifle the incentive to pursue securities claims through class actions. *Id.* Third, non-reliance as an affirmative defense goes to the merits of a case and is not applicable to a class certification motion. "Reliance is an issue lurking behind every securities fraud claim, and to require that it first be proven, would effectively negate the concept of a 10b–5 class action." *Id., citing Vernon J. Rockler & Co., Inc. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 345 (D.Minn.1971). Fourth, whether individual reliance is a necessary element or whether a fraud on the market theory will eventually apply is itself a question which is common to and typical of the entire class. *Data Access, supra,* 103 F.R.D. at 140.

Individual questions of reliance are "not an impediment" to class certification. *Blackie v. Barrack, supra,* 524 F.2d at 905. Indeed, "[q]uestions of reliance are simply irrelevant to class determination." *Muth v. Dechert, Price & Rhoads, supra,* 70 F.R.D. at 607. The lack of any evidence about the nature of plaintiffs' decedent's reliance does not prevent this court from finding that plaintiff has met the typicality requirement of Rule 23(a)(3).

### 3. Numerosity

■ As noted above, defendants do not challenge plaintiffs' contention that the proposed class is numerous enough to satisfy Rule 13(a)(1) (class must be so large that joinder of all members would be impracticable). Plaintiffs contend that 1.88 million shares of Avant-Garde stock were sold in the initial public offering and "millions more" were traded during the class period. Plaintiffs estimate that the proposed class will number in the hundreds or thousands once its members are identified. Certification is not barred because the precise number of class members has not been determined. *Data Access, supra,* 103 F.R.D. at 137; *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 335 (E.D. Pa.1976). Despite the uncertainty about the precise size of the class, the court finds that plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### 4. Commonality

■ Rule 23(a)(2) requires that there exist questions of law or fact that are common to the members of the class. Defendants do not challenge plaintiffs' satisfaction of this requirement. As discussed earlier, the commonality requirement is closely related to that of typicality. the court has already found that the complaint states a "common course of conduct" sufficient to satisfy the typicality requirement. Similarly, the complaint's allegations revolve around a "common nucleus" of law and fact that is the hallmark of a securities class action. *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 690 (E.D.Pa.1977). Commonali-

ty is not defeated by minor discrepancies in class members' positions, *Blackie v. Barrack, supra,* 524 F.2d at 902, or because "all of the allegations of the class do not fit together like pieces in a jigsaw puzzle." *Green v. Wolf Corp., supra,* 406 F.2d at 300. This requirement, too, is satisfied.

### B. Rule 23(b)(3)

### 1. Common Questions of Law or Fact Predominate

■ Rule 23(b)(3) provides that an action may be maintained as a class action if subdivision (a) is satisfied and if in addition the court finds "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." As discussed above, plaintiffs had adequately alleged that defendants engaged in a single course of fraudulent conduct. Each class member's damages may be different, but this should not preclude class certification when common issues which determine liability predominate. *Bogosian v. Gulf Oil, supra,* 561 F.2d at 456. For any individual to prevail, he or she would have to allege and prove that defendants acted as alleged in this complaint. Consequently, the issue of liability is common and predominant. After the common questions are resolved through this litigation, all that should remain is the purely mechanical computation of damages. *See Blackie v. Barrack, supra,* 524 F.2d at 905.

### 2. The Class Action is Superior to Other Available Methods

■ Rule 23(b)(3) further requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiff's decedent invested a relatively small sum in Avant-Garde stock, $3,200. Many other class members' investments— and potential damages—will be similarly limited. A class action is a most appropriate vehicle here because "a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced

him to institute litigation solely on his own behalf." *Green v. Wolf, supra,* 406 F.2d at 296.

It has been widely recognized that for the fair and efficient adjudication of a controversy affecting a large number of securities holders injured by violations of the federal securities laws, the class action is superior to other available methods of adjudication, including the joint prosecution of a multiplicity of duplicative individual lawsuits. *See, e.g., Lewis v. Goldsmith, supra,* 95 F.R.D. at 25; *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 103 (S.D.N.Y.1981).

Prosecuting this action as a class action will "achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons imilarly situated." *Dolgow v. Anderson,* 43 F.R.D. 472, 488 (E.D. N.Y.1969), *quoting* from 1966 Advisory Committee Note, 39 F.R.D. 98, 102–03 (1966). This action thus meets the "superiority" component of Rule 23(b)(3).

**C. Conclusion**

For the reasons expressed in this opinion, the court will certify this case to proceed as a class action under Fed.R.Civ.P. 23. This court will also certify the proposed subclass. An appropriate order will be entered.

ORDER

This matter having come before the court on plaintiffs' motion for class certification, Fed.R.Civ.P. 23; and

The court having considered the submissions and arguments of the parties; and

For the reasons expressed in the court's opinion filed this date,

IT IS on this 5th day of September, 1986, hereby ORDERED:

1. Plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) is **GRANTED**.

2. The certified class is defined as follows:

The Class shall consist of all persons who purchased the common stock of Avant-Garde Computing, Inc. between June 30, 1983 and July 29, 1985. Included within the Class is a Subclass which brings Count II of this action and consists of all persons who purchased the common stock of Avant-Garde from Kidder, Peabody & Co. Excluded from the Class and Subclass are the defendants, members of their immediate families, any entity in which any defendant has a controlling interest, and the legal representatives, heirs, successors, or assigns of any of the defendants.

3. No costs.