Robert W. NELSEN, Lois Y. Nelsen, Dennis A. Vegel, and Janice A. Vegel, individually and on behalf of others similarly situated, Plaintiffs,

v.

CRAIG–HALLUM, INC., Defendant.

No. Civ. 4–86–135.

United States District Court, D. Minnesota, Fourth Division.

April 8, 1987.

Samuel D. Heins and Sherri L. Knuth, Tanick & Heins, and Richard A. Lockridge, Opperman & Paquin, Minneapolis, Minn., for plaintiffs.

Terrence J. Fleming, and Michael Olafson, Lindquist & Vennum, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Robert and Lois Nelsen and Dennis and Janice Vegel charge Craig-Hallum, Inc. with violations of federal securities law and common law fraud. Plaintiffs allege that Craig-Hallum encouraged customers such as themselves to buy stock in the Terrano Corp., although defendant knew that Terrano was in serious financial trouble. They assert that Craig-Hallum was intimately involved with the daily affairs of Terrano and had a great deal of information about the corporation and its financial difficulties. Nonetheless, plaintiffs argue, Craig-Hallum created and circulated fraudulent written statements, containing both false representations and material omissions.

The court previously granted defendant's motion to compel arbitration of the Nelsens' claims. The matter is now before the court on Craig-Hallum's motion to dismiss that part of the complaint which seeks recovery on a "fraud on the market" theory and on the Vegels' motion for class certification.

A. *The Motion to Dismiss*

In considering a motion to dismiss, the court takes plaintiffs' factual assertions to be true.

Craig-Hallum is a Minnesota securities firm. It was a broker of Terrano stock, but also performed numerous other functions for Terrano. Craig-Hallum underwrote a 1983 common stock offering, was a market-maker in common stock, and provided financial consulting and investment banking services to Terrano. At least one Craig-Hallum representative was at each Terrano board of directors meeting during the proposed class period. Craig Hallum was also party to confidential information and deliberations of Terrano directors. It sought additional financing for Terrano. Craig-Hallum knew that Terrano had a critical need for additional financing during the class period and also knew that efforts to secure the needed funds were entirely unsuccessful. Nonetheless, it repeatedly published written statements recommending purchase of the stock. Even after Craig-Hallum gave up its quest for desperately needed financing, it stated that Terrano "currently has no critical need for cash," and continued to recommend purchase.

The Vegels seek to represent a class of those who purchased Terrano common stock through Craig-Hallum between May 8, 1984 and August 12, 1985. They assert that these class members relied on Craig-Hallum's written misrepresentations and omissions. They also claim that they relied upon the "the artificial impact such reports and recommendations had on the market price for Terrano common stock." It is this last assertion that gives rise to defendant's motion to dismiss. Craig-Hallum argues that the so-called "fraud on the market theory" is unavailable in this circuit, or at least in this case, and that plaintiffs claim under the Securities Exchange Act of 1934, § 10(b) and Rule 10b–5 must therefore be dismissed insofar as it relies on this theory.

An essential element of a Rule 10b–5 claim is causation.

> Causation has been most often analyzed in terms of the Rule 10b–5 elements of materiality or reliance.... The element of reliance traditionally required proof that the misrepresentation or omission actually induced the plaintiff to act differently than he would have acted in his investment decision.

*St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040, 1048 (8th Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978). Direct reliance on fraudulent statements is, however, only one theory of causation. Plaintiffs must show " 'some causal nexus' between defendant's conduct and [their] losses, ... [but] proof of causation need not be limited to an affirmative showing of reliance upon a written offering circular." *Dekro v. Stern Brothers & Co.*, 540 F.Supp. 406, 411 (W.D.Mo.1982) (citing *St. Louis Union Trust*, 562 F.2d at 1048). Where the alleged fraud consists primarily of omissions, the reliance requirement may be "relaxed." *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713 (8th Cir.1978).[1] More pertinently, investors may allege that misrepresentations harmed them indirectly "by affecting the market upon which [they] relied and traded." *Harris v. Union Electric Co.*, 787 F.2d 355, 367 n. 9 (8th Cir.) (citations omitted), *cert. denied*, — U.S. ——, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986).

The fraud on the market theory assumes that "in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business." *Peil v. Speiser*, 806 F.2d 1154, 1160 (3d Cir.1986) (citing Note, *The Fraud-on-the-Market-Theory*, 95 Harv.L. Rev. 1143, 1154–56 (1982)). Purchasers who do not directly rely on misstatements, but do rely on the stock's price as evidence of its value, may thereby be defrauded. Thus,

> causation is adequately established in the impersonal stock exchange context by proof of purchase and of the materiality of misrepresentations, without direct proof of reliance. Materiality circumstantially establishes the reliance of some market traders and hence the inflation in the stock price—when the purchase is made the causational chain between the defendant's conduct and plaintiff's loss is sufficiently established to make out a prima facie case.

*Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) *quoted in Lipton v. Documation, Inc.*, 734 F.2d 740, 747 (11th Cir.1984), *cert. denied*, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985). *See also Levinson v. Basic Inc.*, 786 F.2d 741 (6th Cir.1986) (suggesting elements of fraud on the market theory), *cert. granted*, — U.S. ——, 107 S.Ct. 1284, 94 L.Ed.2d 142 (1987).[2]

1. Positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Vervaecke.* The Vegels do not seek to rely on an *Affiliated Ute* theory.

2. There are arguably several fraud on the market theories, or at least several different categories of cases in which it may apply. *See Rose v. Arkansas Valley Envtl. & Util. Auth.*, 562 F.Supp. 1180, 1201 n. 3 (W.D.Mo.1983) (outlining three general categories of cases). The most frequently discussed scenario is that described in *Blackie* and cases following it; in these cases plaintiffs allege that defendants manipulated the price of actively-traded stock. The second category of cases involves fraudulent proxy statements allegedly designed "to create an unfair ... exchange ratio in a forced merger situation." *Rose*, 562 F.Supp at 1201 n. 3 (citations omitted). The third and most controversial category of cases involve newly-issued securities. *See, e.g. Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). Some commentators have criticized the extension of the fraud on the market theory to such cases, *see, e.g.* Note, The Fraud-on-the-Market Theory, 95 Harv.L. Rev. 1156 (1982). In cases of newly-issued securities, some courts have required a showing that the fraud resulted in the marketing of a wholly worthless security. *See, e.g. Lipton v. Documation, Inc.*, 734 F.2d 740 (11th Cir.1984) (reading *Shores* to limit the application of the theory "where new securities are involved to situations

Craig-Hallum challenges the Vegels' reliance on the fraud on the market theory on two grounds. First, it asserts that the Eighth Circuit has rejected the theory, at least in cases primarily involving misrepresentations. Second, it argues that the fraud on the market theory is not available in actions against brokers.

## 1. *The Fraud on the Market Theory*

The Eighth Circuit has approved the fraud on the market theory, at least in "first category" cases involving alleged manipulation of the price of stocks already on the market. Thus, in *Harris v. Union Electric Co.*, 787 F.2d 355, 367 n. 9 (8th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986), the court rejected the argument that evidence was insufficient to establish reliance by bondholders who made their purchases long after the publication of the alleged fraud:

> [Defendant] argues that these bondholders did not rely on the alleged omissions of material fact.... We disagree. False or misleading information, such as that involved in this case, can actually harm investors directly—through actual reliance, or indirectly—by affecting the

market upon which the investor relied and traded.... The plaintiffs established that [defendant's] misleading prospectus inflated the price of the bonds on the open market, which these later purchasers relied upon in making their investment decision. *See, Lipton v. Documation, Inc.*, 734 F.2d 740 (11th Cir. 1984) (adopting fraud on the market theory of recovery), *cert. denied*, 469 U.S. 1132 [105 S.Ct. 814, 83 L.Ed.2d 807] (1985).

Craig-Hallum seeks to limit this language to cases which, like *Harris*, primarily involve omissions. There is nothing in *Harris* to support such a limitation, however, and the court's reliance on *Lipton*, which is not an omission case, weighs heavily against defendant's argument. Craig-Hallum has not cited, and the court is not aware of, any case accepting the fraud on the market theory, but limiting it to omissions cases.[3] Thus far, no circuit has rejected the theory. All adopting it have either held or suggested that it is applicable to affirmative misrepresentation cases. *See Peil v. Speiser*, 806 F.2d 1154 (3d Cir. 1986) (applying fraud on the market theory without determining whether case is one of

where but for the fraud the securities would not have been marketable."), *cert. denied*, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985); *Plastis v. E.F. Hutton & Co.*, 642 F.Supp. 1277 (W.D. Mich, 1986); *Rose*, 563 F.Supp. at 1201–03. Although *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713 (8th Cir.1978) does not discuss the fraud on the market theory as such, it has been read as a rejection of that theory in new issue cases. *See, e.g. T.J. Raney & Sons v. Fort Cobb Irrigation Fuel Authority*, 717 F.2d 1330, 1333 (10th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984). It is, of course, only the first of these theories or categories that is at issue in the instant case.

**3.** Defendant appears to equate the fraud on the market theory with the rule of *Affiliated Ute*. Both provide alternatives to the traditional means of proving causation. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 905–908 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). These are two distinct theories of causation, however. *See, e.g., Levinson v. Basic Inc.*, 786 F.2d 741 (6th Cir.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 1284, 94 L.Ed.2d 142 (1987); *In re McDonnell Douglas Corp. Sec. Litig.*, 587 F.Supp. 625, 628 (E.D.Mo.1983). Craig-Hallum seeks to stretch *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713 (8th Cir.1978), too

far. *Vervaecke* refused to extend *Affiliated Ute* to misrepresentation cases:

> we do not think that dispensing with an initial showing of reliance and substituting a presumption of causation in fact in *all* kinds of 10b–5 fraud is necessary, and that it is not appropriate to apply the *Affiliated Ute* test to this case involving primarily misrepresentation....

*Id.* at 717. *Vervaecke* does not refer to the "fraud on the market theory," nor does it cite any of the earlier cases discussing the theory. The parties may not have argued the theory to the court at all. *See Biben v. Card*, Fed.Sec.L. Rep. (CCH) ¶ 92,010 at 91,000 (W.D.Mo. Apr. 10, 1985) (*Vervaecke* did not reject the fraud on the market theory); *In re McDonnell Douglas*, 587 F.Supp. at 627 n. 1 (same); *Rose v. Arkansas Valley Envtl. & Util. Auth.*, 562 F.Supp. 1180, 1202 n. 36 (W.D.Mo.1983) (same); *Dekro v. Stern Bros. & Co.*, 540 F.Supp. 406 (W.D.Mo. 1982) (same). *But see Svenningsen v. Piper, Jaffray & Hopwood, Inc.*, Fed.Sec.L.Rep. ¶ 92,-854 at 94,149 (D.Minn. Jan. 31, 1986) [Available on WESTLAW, DCT database] (reading *Vervaecke* as partial rejection of fraud on the market theory).

omission or affirmative misrepresentation), *Harris v. Union Electric Co.,* 787 F.2d 355, 367 n. 9 (8th Cir.) (relying on misrepresentation case) *cert. denied,* —— U.S. ——, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986); *Levinson v. Basic Inc.,* 786 F.2d 741 (6th Cir. 1986) (applying fraud on the market theory without determining whether case is one of omission or affirmative misrepresentation), *cert. granted,* —— U.S. ——, 107 S.Ct. 1284, 94 L.Ed.2d 142 (1987); *Lipton v. Documation, Inc.,* 734 F.2d 740 (11th Cir.1984) (misrepresentation case), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985); *T.J. Raney & Sons, Inc. v. Fort Cobb Irrigation Fuel Authority,* 717 F.2d 1330 (10th Cir.1983) (applying fraud on the market theory without determining whether case is one of ommission or affirmative misrepresentation), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1985); *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir. 1981) ("a material misrepresentation or omission is presumed to affect the price of the stock"), *cert. granted,* 458 U.S. 1105, 102 S.Ct. 3481, 73 L.Ed.2d 1365 *vacated as moot,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982). *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (theory applies to both misrepresentation and omission cases), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975) (misrepresentation case), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).[4]

### 2. *Availability of Theory in Cases Against Brokers*

Defendant also argues that the fraud on the market theory should not be available in actions against brokers, but only against the security issuers. It appears that there are no published cases squarely on point. *Cf. Seiler v. E.F. Hutton & Co.,* 102 F.R.D. 880 (D.N.J.1984) (questioning applicability of theory to suit against broker, but not resolving question). Most fraud on the market cases have been brought against issuers, but some have named other defendants as well. *See, e.g., Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975) (issuer's independent auditor); *Biben v. Card,* Fed. Sec.Rep. (CCH) ¶ 92462 (W.D.Mo. Jan. 6, 1986) [Available on WESTLAW, DCT database] (public relations firm); *Dekro v. Stern Brothers & Co.,* 540 F.Supp. 406 (W.D.Mo.1982) (underwriter).

■ Defendant's argument rests on its analysis of the fraud on the market theory. The theory applies where plaintiffs made their purchases on the open and impersonal market, where they rely upon the integrity of the market itself. The theory is therefore inapplicable where plaintiffs had direct contact with the defrauding party and base assertions of liability "on affirmative misrepresentations made to [them] personally." *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 341 (N.D.Ill.1982). Plaintiffs do not contest this standard, but assert that this case is far from the typical fraud action against a broker. First, the alleged misrepresentations were all written. Plaintiffs do not assert that any misrepresentations were made personally to them. Second, defendant was not merely a broker of Terrano stock, but an intimate participant in Terrano's activities: "Plaintiffs believe that discovery will show that Craig-Hallum told Terrano what information to distribute to the public, that Craig-Hallum dominated the market for Terrano stock, and that Terrano was in fact a creation of Craig-Hallum." Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss, at 22. These assertions, if true, would place this case squarely within the fraud on the market theory. Dismissal at this time would therefore be inappropriate.

---

**4.** At the hearing, defendant also argued that the fraud on the market theory should be available only where there is a substanial barrier to traditional proof of causation. Plaintiffs do not appear to disagree, but assert that such a barrier exists in class actions such as this one. This case does in fact present causation problems. The theory has been viewed as most sound where it is used in the context of class actions to eliminate the necessity of each class member proving subjective reliance and where the securities were traded on a developed and open market, so that market prices reflect available information about the corporation. *Lipton v. Documation, Inc.,* 743 F.2d 740, 743 (11th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985).

## B. *Class Certification*

The Vegels seek to maintain their federal securities claim on behalf of a class,[5] defined as:

All persons and entities, other than those set forth below, who purchased common stock of Terrano Corporation through Craig-Hallum, Inc. beginning at least as early as May 8, 1984 through August 19, 1985, inclusive, and excluding those persons or entities party to an agreement with Defendant to arbitrate disputes with Defendant. The class does not include Defendant Craig-Hallum, Inc. or Terrano Corporation, their affiliates and subsidiaries, their officers and directors, members of the officers' and directors' immediate families, any entity in which the Defendant or Terrano Corporation or their officers and directors have a controlling interest, and the legal representatives, heirs, successors and assigns of the officers and directors of Defendant or Terrano Corporation.

Plaintiffs seeking to represent a class must show that they meet the four requirements of Fed.R.Civ.P. 23(a): numerosity, commonality, typicality, and adequacy of representation. They must also satisfy one of the three subsections of Fed.R.Civ.P. 23(b). Rule 23(b)(3), on which plaintiffs seek to rely, requires the predominance of common questions over individual ones and the superiority of the class action over other available methods of adjudication. Craig-Hallum disputes most of these requirements. It also argues that even if the class is certified, it should be narrowed. The plaintiffs have the burden of establishing the requirements of Rule 23. *Dirks v. Clayton Brokerage Co.*, 105 F.R.D. 125, 130 (D.Minn.1985). Certification is proper only if the court "is satisfied, after a rigorous analysis, that the prerequisites ... have been met." *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

### 1. *Numerosity*

The precise number of class members is disputed, but Craig-Hallum concedes that approximately 457 customer accounts and 475 purchase transactions are at issue. Plaintiffs need not prove the precise number of class members. E.g. *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 137, (D.N.J.1984). Defendant properly concedes numerosity. The class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).

### 2. *Commonality and Predominance*

Central to this certification debate are the requirements that there be "questions of law or fact common to the class," Fed.R. Civ.P. 23(a)(2), and that those questions predominate over individual ones. Fed.R. Civ.P. 23(b)(3).

Plaintiffs assert that the class claims arise from a "common nucleus of operative fact": defendant's dissemination of misleading written statements about Terrano and the class members' purchases of Terrano stock at artificially high prices in reliance on defendant's statements. The asserted common questions of law and fact include: whether defendant acted to inflate the stock's market price, whether the alleged fraudulent statements were false and misleading, whether they were material, and whether defendant's conduct violates federal securities law.

Rule 23(a)(2) does not require identity of claims, *e.g. Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 340 (D.Minn.1971), and defendant does not seriously argue that plaintiffs have failed to identify common questions sufficient to satisfy Rule 23(a)(2). Rather, it strenuously urges that they cannot satisfy the more stringent test of Rule 23(b)(3), that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

---

5. The Vegels initially sought certification on both counts. They withdrew their motion for certification on the state common law claim, however, in light of *In re Control Data Corp.*

*Securities Litigation*, —— F.Supp —— Civ. No. 3–85–1341 (D.Minn. Dec. 1, 1986) and *Wendt v. Kennan & Clarey, Inc.*, Civ. No. 3–85–1209 (D.Minn. Nov. 24, 1986).

Craig-Hallum asserts that the predominant issues in this case are individual questions of fact: what oral and written representations were made to each class members, and upon which, if any, of these representations did that individual rely. According to defendant, certification is precluded because the individual class members may have spoken to different brokers, who may have made varied sales pitches, and because not all class members necessarily read and relied upon all of the allegedly fraudulent documents. Unless plaintiffs can show that each class member read and heard exactly the same representations, defendant argues, certification is improper. Defendant concedes that this argument would require denial of class certification in virtually all 10b–5 actions against brokers.

Defendant reads Rule 23(b)(3) too rigidly. "[A]s a general rule, securities fraud actions are allowed to proceed as class actions 'in spite of forseeable variations on the issue of reliance.'" *Reichert v. Bio-Medicus, Inc.*, 70 F.R.D. 71, 75 (D.Minn. 1974) (citations omitted).

> There will always be some individuals who read the financial statements directly, others who read secondary analyses ..., and many others who relied on the advice of stock brokers or friends. If ... factual differences of this nature where sufficient to defeat class certification, there would never be a class action of securities purchases.

*Biben v. Card*, Fed.Sec.L.Rep. (CCH) ¶ 92,-462, at 92,826 (W.D.Mo.1986) [Available on WESTLAW, DCT database] (quoting *In re Data Systems Securities Litigation*, 103 F.R.D. 130, 139 (D.N.J.1984)). The courts have recognized that class actions are "a particularly appropriate and desirable means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'" *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

■ Of course, not all putative class of securities purchasers present sufficient common questions to warrant certification. Where the action is based on variable oral representations, it cannot survive scrutiny under Rule 23(b)(3). *See, e.g., Glick v. E.F. Hutton*, 106 F.R.D. 446 (E.D.Pa.1985); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880 (D.N.J.1984); *McMerty v. Burtness*, 72 F.R.D. 450 (D.Minn.1976). The instant case does not, however, involve any allegation of oral misrepresentations. The Vegels assert that the class members relied on the fraudulent documents and on the market, which had been distorted by those documents.

There is no question that some of the class members, including Dennis Vegel, spoke to individual brokers before purchasing Terrano stock. Some may have relied in part of their brokers' statements, which may have mirrored the written documents or differed from them. Such variations in the influences on individual class members do not, however, defeat class certification unless they overwhelm the common issues. *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.) (common questions predominated), *cert. denied*, — U.S. —, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *Dirks v. Clayton Brokerage Co.*, 105 F.R.D. 125, 132 (D.Minn.1985) (same); *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 344–45 (D.Minn.1971) (same). This is true even where the defendant is a broker. *See, e.g., Shamkroff v. Advest*, 112 F.R.D. 190, 193 (S.D.N.Y.1986); *Dirks; Dura-Bilt Corp. v. Chase Manhattan Corp.* 89 F.R.D. 87, 96–98 (S.D.N.Y.1981) (certifying class in action against numerous defendants, including brokers). It is particularly true where plaintiffs proceed on the fraud of the market theory. *E.g. Dekro v. Stern Brothers & Co.*, 540 F.Supp. 406, 417 (W.D.Mo.1982); *Dura-Bilt*, 89 F.R.D. at 96.

■ Here, plaintiffs have identified a number of significant legal and factual questions common to the class. The common questions include: whether defendant made misrepresentations or omissions, whether any such statements were material, whether they were made with the intent to deceive, and whether defendant acted to inflate the value of Terrano stock. De-

fendant does not identify any legal issues relevant only to individuals or any individual factual issues other than that of causation. Even if the court were to look only at the issue of causation, plaintiffs have made their case for commonality. Plaintiffs assert that they and other class members relied upon a series of materially false statements that defendant published as part of a scheme to inflate the price of Terrano stock and on the market distorted by these statements. Defendant alleges only generally that individual class members may have received somewhat varied information because they did not read all of the false statements or had conversations with brokers. These individual issues pale in comparison to the substantial common issues raised.

### 3. *Typicality*

The parties also dispute whether the Vegels have shown their claims to be "typical of the claims of the class." Fed.R.Civ.P. 23(a)(3). The requirement of typicality is closely related to that of commonality, and the parties' arguments on this requirement closely follow their arguments on commonality. The Vegels assert that their claims are "typical" because they "emanate from the same legal theory as the claims of the class members." *Dirks v. Clayton Brokerage Co.*, 105 F.R.D. 125, 131 (D.Minn. 1985). Defendant asserts that Dennis Vegel's claim is not typical because he relied on his broker's oral statements rather than on the market or the alleged written misrepresentations.

Defendant's argument rests on Dennis Vegel's deposition. Craig-Hallum believes that it contains Vegel's admission that he relied on his broker. The court has carefully reviewed the deposition, and does not find it to be so clear or simple as defendant does. Vegel readily admitted talking with his broker, but stressed his reliance on written statements and on the market. Moreover, partial reliance on a broker's statement does not necessarily vitiate typicality or commonality. *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir), *cert. denied*, — U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). *Biben v. Card*, Fed.

Sec.L.Rep. (CCH) ¶ 92, 462, at 92,826 (W.D. Mo.1986) [Available on WESTLAW, DCT database]; *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130 (D.N.J. 1984). "Reliance on the advice of third parties who serve simply as conduits of the defendants' misrepresentations and omissions does not make class certification less appropriate." *Biben v. Card* at 92,826 (citing *Zandman v. Joseph*, 102 F.R.D. 924, 930–31 (N.D.Ind.1984)).

### 4. *Adequacy of Representation*

Rule 23(a)(4) seeks to ensure that both named plaintiffs and their counsel will vigorously and capably press the claims of the class. Defendant does not challenge the adequacy of plaintiffs' able counsel. Craig-Hallum does, however, vigorously contest the qualifications of the Vegels to represent the class.

Defendant stresses that the Vegels did not commence this suit; they contacted counsel and joined as named plaintiffs after reading in the newspaper that the Nelsens had filed this action. Defendant also argues that the Vegels have no financial involvement in the prosecution of this action and that they are inadequately knowledgeable about the factual and legal bases of the litigation. In particular, Craig-Hallum asserts that Janice Vegel simply relied on her husband and had no real involvement in the purchase that gives rise to this litigation.

■ Class representatives need not have an extensive knowledge of securities law, *e.g. Michaels v. Ambassador Group, Inc.*, 110 F.R.D. 84, 90 (E.D.N.Y.1986), nor a detailed knowledge of the relevant facts. *E.g. Folz v. U.S. News & World Report, Inc.*, 106 F.R.D. 338, 341 (D.D.C.1984). Plaintiffs' knowledge about the transactions detailed in the complaint has little bearing on their adequacy. *E.g. Shamberg v. Ahlstrom*, 111 F.R.D. 689 (D.N.J.1986). Indeed, the quest for a typical investor who fully comprehends the relevant facts and law would inevitably be futile. *E.g., Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 366 (E.D.Pa.1980). Counsels' qualifi-

**489**

cations, which are justly conceded here, are therefore "more important . . . in assessing the adequacy of representation than are the '[p]ersonal qualifications or motives of the proposed class representatives.' " *Biben v. Card*, Fed.Sec.L.Rep. (CCH) ¶ 92,-462, at 92,827 (W.D.Mo.1986) [Available on WESTLAW, DCT database] (citation omitted).[6]

█ Plaintiffs assert, and defendant does not seriously dispute, several important facts: the Vegels diligently sought out plaintiffs' counsel after they learned of this litigation. They reviewed the amended complaint, which was filed after they joined in the suit. They have entered into a fee agreement with counsel. They suffered substantial losses on their investments.

Defendant has raised no serious challenge to plaintiffs' adequacy. Their failure to participate in the drafting of the complaint in no way distinguishes them from most other class representatives. Plaintiffs' alleged lack of "financial involvement" is similarly irrelevant. *E.g., Shamberg v. Ahlstrom*, 111 F.R.D. 689, 694–95 (D.N.J.1986). The alleged inconsistencies or hesitations in deposition testimony are simply insufficient to show that plaintiffs are inadequate. The court is persuaded that they will represent the class vigorously and competently. They more than meet the test urged by defendant: that they "display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation. *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 487 (N.D.Cal.1978).

### 5. *Superiority*

Defendant does not seriously contest plaintiffs' assertion that the class action is superior to other available methods for adjudication of this controversy. Fed.R. Civ.P. 23(b)(3). Indeed "a class action must be deemed the *only* practical method of litigating these issues when the complex nature of the litigation and the comparatively small individual financial interests are considered." *Vernon J. Rockler, Inc. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 347 (D.Minn.1971); *see also Wendt v. Keenan & Clearey, Inc.*, Civ. No. 3–85–1029, slip op at 8–9 (D.Minn. Nov. 24, 1986).

### 6. *The Class Definition*

Defendant asserts that the class definition is overbroad because it includes persons who purchased and then sold Terrano common stock before the close of the class period. Defendant asserts that these investors "passed on any inflation to subsequent purchasers and [therefore] have not been damaged." The court disagrees. The injury suffered by individual investors may vary depending on when they sold their shares in Terrano. This is not to say, however, that those who sold before August 19, 1985 were not injured. They may simply have been less injured. *Cf. Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Under the circumstances, they should not be excluded from the class.

Accordingly, based on the above and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss is denied.

2. Plaintiffs' motion for class certification is granted, and the following class is certified:

All persons and entities, other than those set forth below, who purchased common stock of Terrano Corporation through Craig-Hallum, Inc. beginning at least as early as May 8, 1984 through August 19, 1985, inclusive, and excluding those persons or entities party to an agreement with Defendant to arbitrate disputes with Defendant. The class does not include Defendant Craig-Hallum, Inc. or Terrano Corporation, their affiliates and subsidiaries, their officers and directors,

---

**6.** Where the interests of the named plaintiffs are antagonistic to those of the class, the adequacy may reasonably be challenged. *See, e.g. Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D.Ill. 1986); *Efros v. Nationwide Corp.*, 98 F.R.D. 703 (S.D.Ohio 1983). Defendant does not, however, allege any such antagonism.

members of the officers' and directors' immediate families, any entity in which the Defendant or Terrano Corporation or their officers and directors have a controlling interest, and the legal representatives, heirs, successors and assigns of the officers and directors of Defendant or Terrano Corporation.

3. Within 21 days from the filing of this order, plaintiffs shall submit to the court a proposed notice to the class members. Before submitting this notice, plaintiffs shall confer with defendant regarding the content and the proposed notice.