Tracey SZCZUBELEK, et al., Plaintiffs,

v.

CENDANT MORTGAGE CORPORATION, et al., Defendants.

Civil Action No. 00–CV–2858 (SSB).

United States District Court, D. New Jersey.

March 31, 2003.

David T. Shulick, Law Offices of David T. Shulick, Philadelphia, PA, Lee M. Perlman, Law Offices of Lee M. Perlman, Cherry Hill, NJ, Andrew D. Swain, Messa & Associates, P.C., Philadelphia, PA, for Plaintiffs.

Mitchel H. Kider, David M. Souders, Weiner, Brodsky, Sidman, Kider, PC, Washington, DC, Peter J. Leyh, Kaufman, Coren & Ress, P.C., Mt. Laurel, NJ, for Cendant Mortgage Corporation and Speedy Title and Appraisal Review Services.

**OPINION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

BROTMAN, District Judge.

The purchase of a home is likely to be the most· significant financial investment a person makes. Although buying a home is a rewarding experience, it at times can be confusing and daunting, especially for first-time home buyers. Plaintiff Tracey Szczubelek, a first-time home buyer, filed this action on behalf of herself and others similarly situated, against Defendants Cendant Mortgage Corporation ("Cendant") and Speedy Title & Appraisal Review Services Corporation ("STARS") (collectively "Defendants") challenging the allegedly unlawful practice by Cendant of combining the actual cost of a property appraisal with the administrative costs associated with the appraisal and charging only one fee.

Plaintiffs ask the Court to certify a punitive class pursuant to Fed.R.Civ.P. 23 based on Defendants' alleged violation of the New Jersey Consumer Fraud Act ("NJCFA"). Plaintiffs also make a partial Motion for Summary Judgment on the issue of the Defendants' liability under the NJCFA. Defendants oppose Plaintiffs' motions and move for summary judgment on all counts of Plaintiffs' Amended Complaint pursuant to Fed. R.Civ.P. 56(c).

## I. FACT BACKGROUND AND PROCEDURAL HISTORY

### A. The Parties

#### 1. Defendants Cendant and STARS

Cendant is a New Jersey corporation with its principal place of business and corporate headquarters in Mount Laurel, New Jersey. (Defs.' Statement of Facts ¶ 1.) STARS is a Maryland corporation with its principal place of business in Moorestown, New Jersey.[1] (STARS' Answer ¶ 3; Defs.' Statement of Facts ¶ 2.) STARS offers customers "appraisal management services," which entails the following: providing appraiser quality insurance, ordering the appraisals, processing appraisals, and appraisal underwriting. (Defs.' Statement of Facts ¶¶ 2–3.) STARS employees do not conduct the actual property appraisals, that is, the inspection of the property, taking photographs, and researching comparable properties. (Pls.' Class Mem. at 8.) Rather, STARS contacts local appraisers to do this work, acting as a "middle man" between the mortgage company and the actual appraiser. (Defs.' Statement of Facts ¶ 5.)

STARS and Cendant have a Settlement Services Agreement (the "Agreement"), where STARS provides Cendant "appraisal management services" for Cendant's customers at Cendant's request. (Id. ¶ 3.) According to Defendants, "appraisal management services" entails locating a qualified licensed appraiser, negotiating a fee for the appraisal services, arranging a time for appraiser to visit the property to be appraised, paying the appraiser, and making sure the appraisal is complete, supports the loan the borrower is seeking, and is submitted in a timely fashion. (Decl. of Rebecca Mairone ¶¶ 3–4, 6–8; Defs.'

---

1. STARS previously conducted business as Mortgage Support Services Corporation ("MSSC").

(Decl. of Annette Vollinger at ¶ 10, n. 1.)

Opp'n Mem. to Class Cert. at 24.) Plaintiffs disagree with Defendants' characterization of STARS "appraisal management services" and argue that STARS employees merely duplicate the work of the appraiser and Cendant loan officers. (Pls.' Statement of Facts that Preclude Entry of Summ. J. on Behalf of Defs. ¶ 4.)

### 2. *Plaintiff Tracey Szczubelk*

In December 1999, Tracey Szczubelek ("Plaintiff" or "Szczubelek") obtained a mortgage loan from Cendant to purchase a home located at 690 Greenbrook Road, Plainfield, New Jersey (the "Greenbrook Road property"). (Am.Compl.¶ 24.) A condition of the mortgage loan was that Szczubelek obtain an appraisal on the Greenbrook Road property.

Approximately three months before she closed on the property, Cendant provided Szczubelek a Good Faith Estimate of Settlement Costs which indicated, *inter alia*, that the appraisal fee for her loan would cost approximately $275. (Pls.' Ex. C at D00051– D00053.) A short time after applying for a mortgage, Szczubelek was mailed several documents from Cendant detailing the conditions of the loan and the appraisal process. (Pls.' Class Mem. at 3.) One such document contained a "Third Party Services Providers" section which stated:

> We will be selecting certain suppliers to provide settlement services to you. These suppliers are referred to as "settlement service providers." We will require the use of certain settlement service providers. Right now, we do not know who will be selected to perform these services, but it will be an approved and accepted settlement service provider that we have previously used with our customers.... Your HUD–1 Settlement Statement at closing will disclose the service provider who actually provided the services and the actual costs paid by you.

(Pls.' Ex. C at D00054.)

Another document, the "Affiliated Business Arrangement Disclosure Statement," explained business relationships Cendant maintained with third parties, including

STARS. The disclosure contained the following language:

> This is to give you notice that Cendant Mortgage Corporation ("CENDANT") has a business relationship with [STARS][2], who provides appraisal services for customers of CENDANT. [STARS] and CENDANT are both wholly-owned subsidiaries of PHH Holdings Corporation which is wholly-owned subsidiary of PHH Corporation. The cost of providing your appraisal services is described on your attached Good Faith Estimate. Because of this relationship, this referral may provide CENDANT a financial or other benefit. You are NOT required to use [STARS] as a condition for settlement of your loan. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES. Appraisers selected by our customers must receive prior approval by PHH before providing appraisal services.

(Pls.' Ex. C at 00062) (emphasis in original.)

Defendants argue that this disclosure "fully informed" Szczubelek of both the relationship between Cendant and STARS and that, at her request, she could hire her own appraiser. (Defs.' Opp'n Mem. to Class Cert. at 8.) (*See also id.* at 10) ("Ms. Szczubelek was provided all of the material information necessary to allow her to make an informed choice regarding her appraisal.") Plaintiffs, however, maintain that the two statements are inconsistent and confusing to borrowers. (Pls.' Class Mem. at 4.) Szczubelek states she was never informed she could have saved money by procuring her own licensed appraiser and was left with the impression after speaking with Cendant loan officers that Cendant chooses the appraiser. (*See* Dep. of Tracey Szczubelek at 87, 91) (hereinafter "Szczubelek Dep.")

Although on September 21, 1999, she signed a statement indicating that she "re-

---

**2.** The original document listed "MSSC," STARS' previous business name. (Pls.' Ex. C at 00062.)

ceived, read, and understood" the loan documents presented to her (Pls.' Ex. C at D00050), it is unclear whether Szczubelek actually read or skimmed the "Affiliated Business Arrangement Disclosure Statement" or understood its contents. (Szczubelek Dep. at 56–57, 60.) According to Plaintiffs, Cendant's borrowers received dozens of pages of documents and the reference to STARS is "inconspicuously made to the borrower by way of a standard form...." (Pls.' Class Mem. at 3.) The reference to STARS, Plaintiffs charge, "is made in the context of a one inch thick stack of papers sent to borrowers. Notably, this one page does not require the signature of the borrower and is sent to the borrower after the loan application is made." (*Id.*)

All parties agree Szczubelek never investigated the cost of an independent appraiser or requested that she be permitted to use her own appraiser. (Szczubelek Dep. at 59,74; Defs.' Opp'n Mem. to Class Cert. at 4.) Since Szczubelek did not inform Cendant that she wanted to hire her own appraiser, Cendant requested STARS obtain the required appraisal on the Greenbrook Road property. After being contacted by Cendant, STARS located R.A.S. Appraisals, Inc. ("R.A.S."), a local appraiser, who completed the appraisal on the Greenbrook Road property. On December 22, 1999, R.A.S. completed the appraisal for a cost of $150.00, which it billed STARS. (Pls.' Ex. B, R.A.S. Invoice.)

At settlement, Cendant charged Szczubelek a $275.00 appraisal fee. (Am. Compl., ¶ 24; Pls.' Ex. A to Am. Compl.) According to the HUD–1 Settlement Statement Worksheet, the $275 was paid "to Cendant." (Pls.' Ex. C, D00025.) Both parties agree that the entire $275 charge was transferred from Cendant to STARS. (Pls.' Class Mem. at 2; Defs.' Ex 1, Decl. of Annette Voellinger at ¶ 12 (hereinafter "Voellinger Dec.")) STARS then paid R.A.S. $150 for the appraisal and retained the rest of the money, $125, as a fee for "appraisal management services."

### B. Plaintiff's Complaint and the Procedural History of This Action

On June 12, 2000, Plaintiffs filed a class action Complaint alleging that Cendant un-

lawfully overcharged its borrowers for appraisal services and intentionally deceived borrowers by lumping together the two separate appraisal-related charges, one paid to the appraiser and one paid to STARS. Subsequently, on October 9, 2001, Plaintiffs were permitted to amend their Complaint to add additional parties and claims. Plaintiffs' Amended Complaint charges violations of the Real Estate Settlement Procedures Act 12 U.S.C. § 2601, *et seq.* (Count I); the New Jersey Consumer Fraud Act (Count II); the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (Count IV); and negligent misrepresentation under the New Jersey common law (Count III). Plaintiffs seek both monetary damages and injunctive relief.

Plaintiffs now move for class certification and partial summary judgment limited to the claims brought under the New Jersey Consumer Fraud Act. Defendants move for summary judgment on all claims. The Court now decides the motions on the papers pursuant to Fed.R.Civ.P. 78.

### II. *STANDARD FOR CLASS CERTIFICATION*

■ When reviewing a motion for class certification, a court must undergo a thorough examination of the factual and legal allegations the case presents. *See Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir.1998), *cert. denied*, 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999). Thus, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). *See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir.2001) ("Because the determination of a certification request invariably involves some examination of factual and legal issues underlying the plaintiff's cause of action, a court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.") (quoting 5 Moore's Federal Practice § 23.46[4] ).

To maintain a class action, the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—must be satisfied.[3] *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir.1994). Finally, to be certified the class must also fit within one of the three categories of actions described in Rule 23(b). *See Amchem Prods.*, 521 U.S. at 614, 117 S.Ct. 2231.

The burden of demonstrating fulfillment of these requirements lies with the party seeking class certification, in this case the Plaintiffs.[4] *See Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir.) *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Vargas v. Calabrese*, 634 F.Supp. 910, 920 (D.N.J.1986); *Chevalier v. Baird Sav. Ass'n.*, 72 F.R.D. 140, 144 (E.D.Pa.1976). The plaintiff must do more than simply reiterate conclusory allegations to satisfy the requirements of Rule 23. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996); *Stambaugh v. Kansas Dep't of Corrections*, 151 F.R.D. 664, 671 (D.Kan.1993). Instead, the plaintiff must allege facts demonstrating that all of the requirements for bringing a class action are fulfilled. *See In re Am. Med. Sys.*, 75 F.3d at 1083. Failure to satisfy any of the requirements is fatal, and class certification must be denied. *See Falcon*, 457 U.S. at 161, 102 S.Ct. 2364. *See also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997).

**3.** Federal Rule of Civil Procedure 23(a) provides: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

**4.** There is some disagreement, however, over who bears the burden on the final prerequisite of Rule 23(a), adequacy of representation. *Compare Welch v. Board of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131, 136 (W.D.Pa.1993) (defen-

## III. *ANALYSIS*

Plaintiffs move for certification only on their state consumer fraud claim. Plaintiffs seek to certify a class that consists of "all persons who have paid for property appraisals for residential homes in New Jersey valued at $500,000 or less through Cendant Mortgage Corporation between April 1, 1996 and the present and who were referred to Speedy Title and Appraisal Review Services Corporation for appraisal services." (Pls.' Mot. for Class Cert. at 2.) According to Plaintiffs, because individual reliance is not required under the NJCFA, class certification is appropriate. (Pls.' Class Mem. at 21.) They also ask that the Court appoint Szczubelek as the named class representative. (*Id.*)

Defendants raise a plethora of reasons why they believe this case cannot be maintained as a class action. At the outset Defendants raise a standing issue, arguing that Szczubelek cannot serve as a class representative because she has not suffered any injury under the NJCFA. (Defs.' Opp'n Mem. to Class Cert. at 8–11.) Next, they argue Szczubelek's claims are not common or typical of other punitive class members. (*Id.* at 11–20.) Defendants further argue Plaintiff cannot demonstrate the requisite numerosity. (*Id.* at 20–22.) Then, Defendants charge that individual fact-specific issues preclude a finding of predominance and superiority. (*Id.* at 26–28.) Finally, Defendants argue Plaintiffs' attorneys are not adequate to serve as class counsel. (*Id.* at 28–29.) The Court will address each of these arguments in the order they are listed in Rule 23.

dants bear burden of proving that named plaintiff will be inadequate); *Hoffman Elec. v. Emerson Elec.*, 754 F.Supp. 1070, 1076 (W.D.Pa.1991) (defendants carry burden of proving inadequacy of named plaintiff's representation); *Grant v. Sullivan*, 131 F.R.D. 436, 447 (M.D.Pa.1990) (defendants bear burden of proving named plaintiff will be inadequate); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 693 (D.N.J.1986) ("The burden is on the defendants to prove that plaintiffs' representation will be inadequate") *with Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (party seeking certification bears burden of proof); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D.Pa.1995) (plaintiff bears burden of proving all four requirements of Fed.R.Civ.P. 23(a)).

## A. Rule 23(a) Requirements

### 1. *Numerosity*

The first requirement set forth by Rule 23 is that the proposed class must be so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). This requirement does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient. *See Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993) (impracticability does not mean impossibility, but rather that the difficulty or inconvenience of joining all members calls for class certification).

Whether joinder of all of the class members would be impracticable depends on the circumstances surrounding the case and not merely on the number of class members. *See General Tel. Co. of the Northwest v. E.E.O.C.,* 446 U.S. 318, 329, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (numerosity requires examination of specific facts of each case and imposes no absolute numerical limitations). *See also Liberty Lincoln Mercury,* 149 F.R.D. at 73 (number is not, by itself, determinative); *Ardrey v. Federal Kemper Ins. Co.,* 142 F.R.D. 105, 109 (E.D.Pa.1992) (same). While no minimum number of plaintiffs is required, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir. 2001). Additionally, it is not necessary to demonstrate the precise number of class members when a reasonable estimate can be inferred from facts in the record. *See, e.g., Lloyd v. City of Philadelphia,* 121 F.R.D. 246, 249 (E.D.Pa.1988) (noting that a court may certify a class whose size is unknown "if common sense or common knowledge indicates that it will be large."); *Shamberg v. Ahlstrom,* 111 F.R.D. 689, 698 (D.N.J.1986) (plaintiffs need not specify the exact number of class members). *See also In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 324 (E.D.N.Y.1982) ("A class action may proceed upon estimates as to the size of the proposed class.").

Here, Plaintiffs propose a class consisting of "all persons who have paid for property appraisals for residential homes in New Jersey valued at $500,000 or less through Cendant Mortgage Corporation between April 1, 1996 and the present and who were referred to Speedy Title and Appraisal Review Services Corporation for appraisal services." (Pls.' Mot. for Class Cert. at 2.) Plaintiffs claim Cendant "has accepted appraisal fees from thousands of similarly situated plaintiffs in New Jersey" during the relevant time period. (Pls.' Class Mem. at 26.) They base this figure on the fact that from 1996 through 2000, Cendant closed on 39,280 loans in New Jersey. (*Id.* at 9; 25.) Additionally, Plaintiffs argue that the vast geographic dispersion of the proposed class members, most if not all of whom are located within New Jersey, makes joinder impracticable. (*Id.* at 25–26.) Defendants criticize Plaintiffs' figure, arguing that it is based on Plaintiffs' assumptions and that speculation alone cannot establish a showing of numerosity. (Defs.' Opp'n Mem. to Class Cert. at 21–22) (citing *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989)). Instead, they classify Plaintiff Szczubelek as "a class of one." (*Id.* at 2.)

The Court finds Defendants' agreements unpersuasive. As noted by the Court of the Eastern District of Pennsylvania, specific numbers are not required when "common sense" manifests that a reasonable estimate can be inferred from the facts. *Lloyd,* 121 F.R.D. at 249. *See also Liberty Lincoln Mercury,* 149 F.R.D. at 73 (exact size of proposed class not required). *See also Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir.1981) ("In order to satisfy his burden with respect to [numerosity], a plaintiff must ordinarily demonstrate some evidence *or reasonable estimate* of the number of purported class members.") (emphasis added).

Additionally, the focus is not strictly on the number of punitive class members, but also on whether "joinder of all members is impracticable" Fed.R.Civ.P. 23(a)(1). Various factors beyond the number of class members are relevant to determining impracticability, including: judicial economy; geographic dis-

persion of the class members; financial resources of the class members; and the ability of claimants to institute individual suits. *See Liberty Lincoln,* 149 F.R.D. at 74 (practicability depends on size of class, ease of identifying members and determining addresses, ease of service on members if joined, geographic dispersion, and ability of class members to pursue individual suits); *Brosious v. Children's Place Retail Stores,* 189 F.R.D. 138 (D.N.J.1999) ("plaintiffs may further strengthen claims of joinder impracticability by asserting that the members of a proposed class are geographically scattered").

Of equal importance, when class member's individual claims involve only a small amount of damages, as Plaintiffs allege here, joinder is more likely to be impracticable because it is assumed class members either lack the ability or the motivation to institute individual actions. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available"). *See also Liberty Lincoln,* 149 F.R.D. at 73 (not impracticable to join 123 plaintiffs because individuals were readily identifiable and able to bring suits on their own).

Plaintiffs present proof that Cendant closed on approximately 40,000 loans during the relative time frame. (*See* Pls.' Ex. J.) Plaintiffs' failure to pinpoint the precise size of the proposed class is not a fatal defect to their motion since the facts indicate the number of potential class members allegedly affected by Defendants' practices is in the hundreds or possibly thousands, located all over the State of New Jersey. *See Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989) (joinder impracticable because class numbered in thousands); *McMahon Books, Inc. v. Willow Grove Assoc.,* 108 F.R.D. 32, 35 (E.D.Pa.1985) (joinder impracticable where class was between 30 and 50 members). Additionally, the amount of individual damages allegedly suffered, $125 in Plaintiff Szczubelek's case, is so small that it is unlikely

individual plaintiffs would retain lawyers to pursue individual suits. Thus, the numerosity requirement is satisfied.

### 2. *Commonality*

A court may grant class certification only if there are questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). This "commonality" requirement serves the dual purposes of (1) fair and adequate representation of the interests of absentee members; and (2) practical and efficient case management. *See Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364 (commonality serves as a "guidepost" in determining whether class action is economical and whether absentee members will be fairly represented); *Baby Neal,* 43 F.3d at 56 (commonality assures efficient case management and fair representation of absentee members).

Plaintiffs argue commonality exists because "[t]his case centers upon a common nucleus of operative facts, i.e., whether Defendants acted deceptively by failing to disclose the true costs of the appraisal and the actual recipients of the fees charged for the appraisal." (Pls.' Class Mem. at 27.) Defendants, combining their commonality and typicality arguments, maintain that Szczubelek "cannot establish that her factual situation is common or typical of any other New Jersey borrowers." (Defs.' Opp'n Mem. to Class Cert. at 12.) First, they note that not all borrowers received the same disclosure documents, especially considering the proposed class spans from 1996 to present, and documents change from year to year. (*Id.* at 12–13.) Second, they argue that Szczubelek's "confusion" after speaking with Cendant loan counselors cannot be attributed to all class members. (*Id.*)

Contrary to Defendants' assertions, commonality does not require an identity of claims among class members. Rather, "[t]he commonality standard will be satisfied in the named plaintiffs share *at least one* question of fact or law with the grievances of the prospective class." *In re the Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 310 (3d Cir.1998) (emphasis added). *See also Baby Neal,* 43 F.3d at 56 (commonality requirement not demanding because require-

ment may be satisfied by single common issue). In the Third Circuit, the commonality threshold is relatively low. *Newton,* 259 F.3d at 183 (citing *In re School Asbestos Litig.,* 789 F.2d 996, 1001 (3d Cir.1986) (noting that the "threshold of commonality is not high")).

Plaintiffs claim Cendant engaged in a systematic scheme to defraud borrowers by keeping them in the dark about the true cost of their property appraisal. Plaintiffs charge this deception was an official or standard business practice, "indoctrinated" in all employees and which appeared in Cendant's employee training materials. (Pls.' Class Mem. at 18, 24, 28; Pls.' Ex. Q.) In other words, Plaintiffs' allegations are based on a common course of conduct by Defendants. The Court finds that as a Cendant borrower, Szczubelek "share[s] at least one question of fact or law with the grievances of the prospective class." *Prudential,* 148 F.3d at 310. Therefore, the commonality criterion is sufficiently satisfied.

### 3. *Typicality*

One or more members of a class may sue as representative parties on behalf of all class members only if the claims or defenses of the representative parties are typical of the claims of the class. Fed. R.Civ.P. 23(a)(3); *Prudential,* 148 F.3d at 310. The "typicality" requirement attempts to ensure that the named plaintiff's interests are substantially aligned with those of the absent class members. *See Baby Neal,* 43 F.3d at 57–58 (typicality seeks to ensure fair representation of absentee class members by examining whether interests of named plaintiff align with those of class members). *See also Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985). By ensuring that the class representative's claims are similar to those of the class, the typicality requirement, like commonality, promotes efficient case management and fair representation.[5] *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364 (typicality is concerned with economy of class action and adequate representation of absentee

members). Like the commonality requirement, courts in the Third Circuit have set a low threshold for satisfying the typicality requirement. *Newton,* 259 F.3d at 183 (citing *Barnes,* 161 F.3d at 141).

Plaintiff avers the typicality requirement is met because the harm suffered by Szczubelek and the members of the proposed punitive class flows from the same source—Cendant's uniform practice of lumping together the charges of STARS and the cost of the appraisal and not disclosing this fee split. (Pls.' Class Mem. at 28.) If the class representative's claims arise from the same events, practice, or conduct, and are based on the same legal theory as those of other class members, the typicality requirement is satisfied. *See Eisenberg,* 766 F.2d at 786. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics as those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *Compare Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 923 (3d Cir.1992) (fact that two of fifteen class representatives profited from some securities transactions did not defeat typicality in action challenging defendant's failure to advise purchasers of excessive markup policy), and *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985) *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985) (typicality not defeated by investments in different limited partnerships because claims were based on same alleged omissions and misrepresentations), *with Liberty Lincoln Mercury,* 149 F.R.D. at 77 (highly specific factual circumstances that required individual determinations of liability under state franchise practices act defeated typicality).

Courts in the Third Circuit have deemed the typicality requirement satisfied in cases involving single course of conduct resulting in same harm. *See, e.g., Prudential,* 148 F.3d at 311 (typicality requirement satisfied

---

**5.** Despite their similarity, the commonality and typicality requirements serve distinct functions. The commonality requirement tests the sufficiency of the class' claim. *See Hassine v. Jeffes,* 846

F.2d 169, 177 n. 4 (3d Cir.1988). The typicality requirement focuses on the relation between the representative parties and the class as a whole. *Id.*

because representatives and members were injured by same types of deceptive practices and suffered same generic type of economic harm); *Newton,* 259 F.3d at 183 (typically requirement satisfied in securities fraud action). *See also Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123, 130 (3d Cir.1987), *cert. denied* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.").

■ Here, the claims of Szczubelek and the punitive class members allegedly arise from standardized documents containing inadequate disclosures used in furtherance of a common course of fraudulent conduct in violation of state law. In this Circuit, " '[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.' " *Baby Neal,* 43 F.3d at 58 (quoting *Hoxworth,* 980 F.2d at 923); *Steiner v. Equimark Corp.,* 96 F.R.D. 603, 608 (W.D.Pa.1983) (perpetuation of alleged wrong over lengthy period through variety of different documents does not by itself defeat certification of class). *See also Arenson v. Whitehall Conv. & Nursing Home,* 164 F.R.D. 659, 664 (N.D.Ill.1996) (commonality found in action alleging that standardized agreements contained misrepresentations which permitted excessive billing in violation of the Illinois consumer fraud statute). Thus, the Court is satisfied the typicality element is met in this case.

### 4. *Adequacy of Representation*

■ The final prerequisite of Rule 23(a) requires that the representative parties fairly and adequately represent the class. *See* Fed.R.Civ.P. 23(a)(4). In determining whether the interests of a class will be repre-

sented adequately, courts consider the adequacy of both the named representative and class counsel. Both the named plaintiffs and their attorneys must show that they "will competently, responsibly and vigorously prosecute the suit." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). *See also Lewis v. Goldsmith,* 95 F.R.D. 15, 19 (D.N.J.1982). Thus, adequacy of representation requires two elements: (1) the class representative must not have interests antagonistic to those of the class, and (2) class counsel must be qualified, experienced, and generally able to conduct the proposed litigation.[6] *See Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). *See also Morris v. Risk Magmt. Alternatives, Inc.,* 203 F.R.D. 336, 344 (N.D.Ill.2001).

■ In determining the adequacy of the named representative, courts also consider whether the representative will vigorously advocate the class claims and whether potential conflicts might arise. Under the facts presented to the Court, there are no foreseeable conflicts between the named Plaintiff and the class members. *See Ardrey v. Federal Kemper Ins. Co.,* 142 F.R.D. 105, 111–12 (E.D.Pa.1992) (because every member of proposed class was injured by defendant's allegedly wrongful conduct, and there was no evidence of potential antagonism, class representatives were adequate); *Roe v. Operation Rescue,* 123 F.R.D. 500, 504 (E.D.Pa.1988) (no conflict of interest in case in which only certain members of class were entitled to damages). Defendants' argument that Szczubelek is inadequate due to her lack of factual knowledge regarding the real estate appraisal process is not valid since only a minimal degree of knowledge necessary to meet the adequacy standard. *See Zinberg v.*

---

**6.** The Supreme Court has noted that the adequacy-of-representation requirement overlaps with the commonality requirement of Rule 23(a)(2). *See Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364 (both requirements evaluate whether absentee members will be fairly represented). However, the two requirements remain distinct because the adequacy-of-representation requirement considers additional issues, such as evaluating the competency of class counsel and considering potential conflicts of interest among class members. *Id.*

*Washington Bancorp., Inc.,* 138 F.R.D. 397, 408 (D.N.J.1990) (adequacy of representation does not require that named plaintiffs be totally aware of all facts concerning claims at issue). *See also Hoffman Elec., Inc. v. Emerson Elec. Co.,* 754 F.Supp. 1070, 1077 (W.D.Pa.1991) (plaintiff's lack of personal knowledge about facts of securities case did not indicate inadequate representation); *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 366 (E.D.Pa.1980) (adequacy of representation does not require person unschooled in realm of complex and abstract securities laws to have firsthand knowledge of facts). Accordingly, a proposed representative's lack of particularized knowledge concerning the dispute at issue "does not render her inadequate given the fact that she has retained adequate counsel to represent her." *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 122 F.R.D. 177, 182 (E.D.Pa.1988). *See also Shamberg v. Ahlstrom,* 111 F.R.D. 689, 695 (D.N.J.1986) (Brotman, J.).

█ Further, there is no reason for the Court to conclude that counsel would not adequately represent the class. *See Hoxworth,* 980 F.2d at 924 (plaintiffs' attorney must be qualified, experienced, and generally able to conduct proposed litigation). Courts have not developed a particularized standard for what constitutes sufficient legal expertise. *See e.g., In re Chambers Dev. Sec. Litig.,* 912 F.Supp. 822, 835 (W.D.Pa.1995) (adequacy found where counsel had extensive experience with class actions and securities law); *Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 160 (S.D.Ohio 1992) (counsel, who had not litigated cases involving heart valves, was adequate because counsel had substantial experience in class actions and obtained special counsel with expertise in area); *Jackson v. Rapps,* 132 F.R.D. 226, 232 (W.D.Mo.1990) (attorney with twelve years experience was well qualified to be class counsel); *Armstrong v. Chicago Park Dist.,* 117 F.R.D. 623, 631 (N.D.Ill. 1987) (class counsels' limited experience in representing plaintiff classes not a bar to serving as counsel given general success to date). It is largely a question of fact for the District Court to determine on a case-by-case basis. *See Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 728 (11th Cir.1987) (ade-quacy of representation is primarily a factual issue).

Here, Plaintiffs' counsel maintain they "are highly competent" and hold "significant experience in federal litigation and class action litigation" including "substantial experience in handling complex class cases." (Pls.' Class Mem. at 30–31.) They list seven class actions where they have represented clients and detail individual attorneys' experiences. (*Id.*) Upon review, the Court is satisfied Plaintiffs' counsel will adequately represent the class.

Accordingly, the final requirement of Rule 23(a) is met. Now, the Court must continue the analysis of Plaintiffs' Motion for Class Certification under Rule 23(b).

## B. Rule 23(b)(3)

█ Plaintiffs argue that certification is proper pursuant to Rule 23(b)(3), which applies if "the court finds questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See* Fed.R.Civ.P. 23(b)(3) (Pls.' Class Mem. at 33). Defendants contend that individual questions predominate because of the "diverse factual circumstances involving the selection of an appraiser elude the parameters of Rule 23." (Defs.' Opp'n Mem. to Class Cert. at 26.) According to Defendants, the circumstances involved in the choice of an appraiser "vary widely from individual to individual, home to home and transaction to transaction." (*Id.*)

█ Predominance focuses on the number and significance of common questions, as opposed to individual issues. The predominance requirement demands that the issues in the class action are applicable to the class as a whole and are subject to generalized proof. *See Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1557–58 (11th Cir.1989). Rule 23(b)(3) specifies that a court, in determining whether to certify a class under the Rule, should consider: (1) the interests of the class members in individually controlling their own litigation, (2) the nature and extent of any

relevant, pending litigation brought by or against members of the class, (3) the desirability of concentrating the litigation in the particular forum, and (4) difficulties that the management of the class action is likely to present. *See* Fed.R.Civ.P. 23(b)(3)(A)-(D). This list, however, is not exhaustive. *See Amchem Prods.*, 521 U.S. at 615–16, 117 S.Ct. 2231.

When determining whether individual issues predominate over common issues, a court may look at the underling claim on which plaintiffs seek recovery. *See Falcon*, 457 U.S. at 160, 102 S.Ct. 2364 (stating "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"). Indeed, the "claims, defenses, relevant facts, and applicable law" must be reviewed in order to evaluate whether the requirement has been met. *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996). Here, Plaintiffs are seeking certification for the purposes of adjudicating only one claim, the alleged violations of the New Jersey Consumer Fraud Act (Count II).[7]

To state a claim under the NJCFA, a private plaintiff must show (1) a violation of the Act; (2) that suffered an ascertainable loss as a result of the unlawful conduct; and (3) a causal relationship between the unlawful practice and the loss sustained by plaintiff. *See Weinberg v. Sprint Corp.*, 173 N.J. 233, 236–37, 801 A.2d 281 (2002); *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 271, 390 A.2d 566 (1978). *See also* N.J.S.A. 56:8–19.

First, examining Plaintiff Szczubelek's specific allegations, she does not claim that the disclosures contained actual misrepresentations. Rather, the basis for her claim is that she was "confused" by the disclosures and she received the "impression" that Cendant choose the appraiser after speaking with Cendant loan representatives. (Pls.' Class Mem. at 5; Szczubelek Dep. at 60.) Since she does not ground her claim on the wording of the disclosure statement, a fact-finder would have to see whether oral misrepresentations were made to each particular class member. Such an individual inquiry precludes a finding of predominance. *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 190 (3d Cir.2001) (affirming denial of class certification where the action was based on oral rather than written communication, noting that "it has become well-settled that, as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action") (citing *In re LifeUSA Holding Inc.*, 242 F.3d 136, 145–46 (3d Cir.2001); *Simon v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir.1973); *Glick v. E.F. Hutton & Co., Inc.*, 106 F.R.D. 446, 449 (E.D.Pa.1985)). *See also Rodriguez v. McKinney*, 156 F.R.D. 112, 115–116 (E.D.Pa. 1994) (individualized issues of reliance predominated in case involving students' allegations that school misrepresented the benefits that they would receive from the school's curriculum); *Glick v. E.F. Hutton & Co.*, 106 F.R.D. 446, 450 (E.D.Pa.1985) (certification denied because of differences between class members in their reliance on omissions and misrepresentations); *Soper v. Valone*, 110 F.R.D. 8, 9 (W.D.N.Y.1985) (no predominance of common issues even though similar oral presentations were used to induce investment).

Nowhere in the Amended Complaint does Szczubelek allege that all members of the class received similar statements by Cendant employees, despite the requirement of proof of such uniformity. *See Glick*, 106 F.R.D. at 450 (certification would have been granted had plaintiff shown that brokers' oral representations were uniform); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 888 (D.N.J. 1984) (highly individualized nature of oral communications between class members and

---

7. The New Jersey Consumer Fraud Act provides, *inter alia,:*

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
> N.J.S.A. 56:8–2.

defendants generally results in denial of certification). *See also Kaser v. Swann,* 141 F.R.D. 337, 339–340 (M.D.Fla.1991) (certification denied in class action based on oral misrepresentations because plaintiffs failed to demonstrate that such representations were uniform).

As to Szczubelek's complaints about the inadequacy of the disclosure statement, certainly there were home buyers who read Cendant's disclosure, understood exactly what it meant, and based their actions accordingly. As Defendants note, these customers could have decided that the appraisal service Cendant offered was the best use of their time and money. (Defs.' Opp'n Mem. to Class Cert. at 25, 27.) Further, some home buyers could have "shopped around" as the disclosure suggested and determined that the price quoted by Cendant was, in fact, the best deal they could find.

 Finally, there may be some Cendant customers who, like Plaintiff Szczubelek, did not understand the language of the disclosure, paid what they thought was the appraisal fee to Cendant, but did not experience any ascertainable loss, as required by the Consumer Fraud Act. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir.2001) (holding that when each individual claim would have to be examined to ascertain whether there was an injury, the predominance requirement would not be satisfied because individual issues overwhelmed common questions among the class). Under the NJCFA, loss is not assumed. Rather, it is an element that must be proven by each plaintiff. *See Meshinsky v. Nichols Yacht Sales, Inc.,* 110 N.J. 464, 473, 541 A.2d 1063 (1988) (noting that to prevail under the NJCFA, "a private plaintiff must show that he or suffered and ascertainable loss ... as a result of the unlawful conduct."). As the Third Circuit stated in *Newton,* "[i]f proof of the essential elements of the cause of action required individual treatment, the class certification is unsuitable." *Newton,* 259 F.3d at 172 (citing *Binder v. Gillespie,* 184 F.3d 1059, 1063–66 (9th Cir. 1999) *cert. denied,* 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000)).

Plaintiffs' statement that "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination" while correct, is misplaced and not applicable in this case. (Pls.' Class. Mem. at 35 (citing *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977)), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978)). Here, the *issue is not the measure or calculation of damages. Instead, the question is whether or not a* plaintiff sustained damages at all.

Thus, individual proofs predominate issues applicable to the class as a whole and the predominance requirement cannot be sustained. Accordingly, Plaintiff's motion for class certification must be denied.

## IV. *SUMMARY JUDGMENT STANDARD*

The standard for granting a motion for summary judgment is a stringent one, but it is not insurmountable. Federal Rule of Civil Procedure 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.,* 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey,* 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to mate-

rial facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin,* 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## V. ANALYSIS

Plaintiffs move for summary judgment on the issue of Defendants' liability under the New Jersey Consumer Fraud Act. According to Plaintiffs, Cendant engaged in a pattern of deceptive business practices, purposefully misled borrowers by "disguising" an administrative fee paid to STARS. (Pls.' Mot. for Partial Summ. J. at 2.) This deceptive behavior, Plaintiffs charge, misleads borrowers into believing the cost of the appraisal is more than its actual price. (*Id.*) According to Plaintiffs, "borrowers looking to Cendant Mortgage for loans are being deceived and ripped off by an unlawful business scheme orchestrated to increase revenues and profits for STARS and Cendant Corporation." (*Id.* at 39–40.)

Defendant opposes this motion and moves for summary judgment on all counts. Defendants argue that "there are no genuine issues as to any material fact with respect to the allegations in plaintiff's Complaint" and that they are entitled to a judgment in their favor as a matter of law. (Defs.' Mot. Summ. J. at 1.) Specifically, Defendants assert (1) documents contained the mortgage papers informed borrowers that appraisal services would be completed by another entity and (2) that Szczubelek has not presented evidence that she was overcharged for her appraisal or could have obtained an appraisal for less

than the $275 she was charged. Thus, Defendants maintain that Szczubelek was not harmed by the Cendant–STARS Agreement. According to Defendants, the price Szczubelek paid was at or below market rate for appraisal in northern New Jersey.

### A. Count I: Real Estate Settlement Procedures Act (RESPA)

Congress enacted RESPA to protect home buyers from unnecessarily high settlement charges caused by abusive practices, such as kickbacks and unearned fees. *See* 12 U.S.C. § 2601(a). To achieve this goal, Section 8(a) of RESPA prohibits the payment of or acceptance of "any fee, kickback, or thing of value pursuant to any agreement or understanding ... that business incident to or part of a real estate settlement service involving a federally regulated mortgage loan...." 12 U.S.C. § 2607(a). Further, Section 8(b) provides that "[n]o person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). Federal regulations promulgated under RESPA defines an unearned fee as "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged...." 24 C.F.R. § 3500.14(c).

#### 1. Unlawful Referral

█ Section 2607(a) of RESPA prohibits the payment of referrals in connection with mortgage loans. Specifically, § 2607(a) states:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). Plaintiffs charge that:

Cendant's closing documents state that a third-party mortgage fee was paid by Cendant to Century 21 Home First Realtors. Upon information and belief, this fee or thing of value transferred to Century 21 by

Cendant for this referral is in direct violation of R.E.S.P.A.

(Am.Compl.¶ 25.)

According to Cendant's Vice President for Operations, Annette Voellinger ("Voellinger"), no such fee was paid by Cendant in connection with Szczubelek's loan. (Voellinger Dec. at ¶ 5.) Specifically, Voellinger states that Cendant's business practice is to "not pay referral fees," even to the extent that are permitted by RESPA. (*Id.* at ¶¶ 6, 9.) Additionally, neither the HUD–1 Settlement Statement nor the HUD–1 Settlement Statement Worksheet indicates that such a referral fee either charged to Szczubelek or was paid by Cendant to Century 21. Further, Plaintiff has offered no evidence to support the assertion made in her Amended Complaint. Accordingly, Defendants are entitled to summary judgment in their favor on the allegations contained in Count I that Cendant violated RESPA by paying Century 21 a referral fee.

### 2. *Fee Splitting*

 Section 2607(b) of RESPA prohibits "fee splitting" in connection with mortgage loans. This section states:

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

The purpose of 12 U.S.C. § 2607(b) is to prohibit charges for the rendering of real estate settlement service *other than for services actually performed. See United States v. Gannon,* 684 F.2d 433 (7th Cir.), *cert. denied* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 248. In fact, the statute continues in part (c) to provide that "[n]othing in this section shall be construed as prohibiting (1) the payment of a fee ... by a lender to its duly appointed agent for services actually performed in the making of a loan...." 12 U.S.C. § 2607(b).

Thus, the issues the Court is called on to decide to decide the parties motions for sum-mary judgment are: whether the fee collected by STARS was *bona fide* compensation for services preformed and whether the fee charged was appropriate for the services rendered. On the one hand, Plaintiffs argue the administrative services performed by STARS is merely a duplication of the work completed by Cendant and/or the local appraiser and characterizes the cost as a "hidden administrative fee." (Pls.' Class Mem. at 20; Pls.' Statement of Disputed Material Facts that Preclude Entry of Summ. J. on Behalf of Defs. ¶ 4.) Specifically, Plaintiff notes that a STARS employee "review[s] the work of the appraiser," a task which is then repeated by a Cendant employee. (Pls.' Class Mem. at 14.) Plaintiff further points out that the STARS charge for "ordering and reviewing" the appraisal report is excessive and, at $125, is almost as high as the cost of the actual appraisal. (*Id.* at 6–7, 29.)

On the other hand, Defendants argue STARS employee Joann Gehen performed a myriad of services for Szczubelek, including locating a qualified licensed appraiser, negotiating a fee for the appraisal services, arranging a time for appraiser to visit the property to be appraised, paying the appraiser, making sure the appraisal was complete and that it supported the $172,000 loan Szczubelek was seeking, and submitting a hard copy to Cendant so that Szczubelek could close on the property. (*See* Defs.' Statement of Facts ¶¶ 8,9; Mairone Dec. at ¶¶ 3–4, 6–8; Defs.' Opp'n Mem. to Class Cert. at 24.)

Whether the "appraisal management services" performed by STARS was *bona fide,* as Defendants argue, or a mere duplication of work, the position urged by Plaintiffs, creates a genuine issue of material fact making summary judgment inappropriate. Therefore, Defendants' motion on the RESPA claim must be denied with regard to the fee paid to STARS.

### B. Count II: New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.,* states, in pertinent part:

The act, use or employment by any person of *any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact* with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8–2 (emphasis added).

The Act creates three categories of unlawful practices. *See* N.J.S.A. §§ 56:8–2; 56:8–4. *See also Strawn v. Canuso,* 140 N.J. 43, 60, 657 A.2d 420 (1995); *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 19, 647 A.2d 454 (1994). The first—unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation—consists of affirmative acts. *Cox,* 138 N.J. at 17, 647 A.2d 454. The second category—concealment, suppression or omission of any material fact—consists of acts of omission. *Id.* A third unlawful practice is based on violations of State regulations. *Id.*

Affirmative acts of fraud require no showing of intent on behalf of the defendant. *See Cox,* 138 N.J. 2 at 17, 647 A.2d 454; *Fenwick v. Kay Am. Jeep, Inc.,* 72 N.J. 372, 378, 371 A.2d 13 (1977). *See also Skeer v. EMK Motors, Inc.,* 187 N.J.Super. 465, 455 A.2d 508 (App.Div.1982). Thus, a defendant who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence or the intent to deceive. *Strawn,* 140 N.J. at 60, 657 A.2d 420. In contrast, when the alleged consumer fraud consists of an omission, a plaintiff must show the defendant acted with knowledge, thereby making intent an essential element of the fraud. *See Cox,* 138 N.J. at 18, 647 A.2d 454; *Chattin v. Cape May Greene, Inc.,* 124 N.J. 520, 522, 591 A.2d 943 (1991) (Stein, J. concurring).

Defendants argues Plaintiffs' claims are based on omission and, therefore, require a showing of intent. (Defs.' Summ. J. Mem.

at 16.) In response, Plaintiffs maintain Defendants committed affirmative acts, and therefore, a showing of intent is not necessary. (Pls.' Class Mem. at 21.) Despite this convenient argument, papers submitted to the court show otherwise. Throughout the documents filed with the court to support their motions, Plaintiffs make numerous references characterizing Defendants' behavior as an omission. For example, Plaintiffs' briefs and memorandums state the following:

- "Cendant *intentionally conceals* the fact that the appraisal charge includes a fee for ordering the appraisal and a fee charged by the licensed appraiser." (Pls.' Class Mem. at 6) (emphasis added.)

- *"This practice* of pocketing the difference is the actual business model followed by STARS which *is kept hidden* from the borrower." (*Id.* at 7) (emphasis added.)

- "This *hidden processing fee* is the basis of this class action." (*Id.* at 20) (emphasis added.)

- "It is the position of Plaintiffs here that the *failure to disclose* to a borrower of credit that a lender or service provider is retaining a portion of an expense is actionable under the NJCFA." (*Id.* at 22) (emphasis added.)

- "Ms. Szczubelek was *not advised* of the fee split...." (*Id.* at 24) (emphasis added.)

- "... the misrepresentations *and omissions* and conduct at issue is essentially uniform for all plaintiffs...." (*Id.* at 27) (emphasis added.)

- "The practice of lumping the appraisal fees and *intentionally not disclosing* the fee split is the standard practice followed by Cendant Mortgage." (*Id.* at 28) (emphasis added.)

- "... Defendants *conceal* the identity of the appraiser from the borrower...." (*Id.*) (emphasis added.)

- "The deception at issue in this case involves the *failure* of Cendant *to provide* the specific charges in connection with the loan process." (Pls.' Partial Summ. J. Mem. at 5) (emphasis added.)

● To support her motion for Summary Judgment, Plaintiff frames Defendants' actions as *"intentional[ ] conceal[ment]."* (*Id.* at 6) (emphasis added.)

Given these statements, it becomes clear to the Court that Plaintiffs' Consumer Fraud claim is, at a minimum, a combination of affirmative acts and omissions, which would require proof of reliance.

■ In addition to the intent element, which may be required in some cases, to prevail on any type of claim under the Consumer Fraud Act, a private plaintiff must show (1) a violation of the Act; (2) that suffered an ascertainable loss as a result of the unlawful conduct; and (3) a causal relationship between the unlawful practice and the loss sustained by plaintiff. *See Weinberg v. Sprint Corp.*, 173 N.J. 233, 236–37, 801 A.2d 281 (2002); *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 271, 390 A.2d 566 (1978). *See also* N.J.S.A. 56:8–19. Here, Cendant argues that its practice of not listing the separate costs of the actual appraisal and the appraisal management company is not unlawful, because loan applicants are given notice they may wish to "shop around" and obtain their own appraisal. (Defs.' Summ. J. Br. at 1, 8.) Additionally, Defendants charge Plaintiff Szczubelek has not shown she sustained any damages or "ascertainable loss" due to Cendant's practices. (Defs.' Summ. J. Br. at 15–18.) Defendants contend that the $275 Szczubelek paid was at or below market price for an appraisal during the time in question. (Defs.' Statement of Disputed Material Facts that Preclude Entry of Partial Sum. J. in Favor of Pl. ¶¶ 1, 5.) Specifically, Defendants argue "plaintiff cannot demonstrate that she suffered any such loss because there is not evidence in the record to support her assertion that R.A.S.[,] or any other appraiser, would have performed an appraisal for her in 1999 at a fee less than $275.00." (Defs.' Opp'n Mem. to Class Cert. at 16.) To support their position, Defendants present the declaration of Rebecca Mairone, STARS' former Vice President of Operations, and the deposition testimony of Michael Barattucci, STARS current Vice President of Operations. (Defs.' Ex. 2 at ¶ 8; Barattucci Dep. at 118–19.)

Unlike the consumer in *Cannon v. Cherry Hill Toyota, Inc.*, 161 F.Supp.2d 362, 375 (D.N.J.2001) who did not adduce any evidence tending to show an actual loss, here Plaintiff argues she could have obtained an appraisal approximately $50 to $100 less than the $275 she was charged, a claim Defendants vigorously deny. (Pls.' Partial Summ. J. Mem. at 9.) To support this assertion, Plaintiff offers the deposition testimony of Robert Solotist ("Solotist"), owner of RAS, the appraisal company that completed the appraisal of Szczubelek's property after being contacted by STARS. (*See* Pls.' Ex. H.) Thus, the Court is presented with a situation where the parties present conflicting evidence. Such a situation precludes summary judgment because there exist questions of fact and issues of credibility, motive, and bias which must be sorted out by a finder of fact.

Whether Defendants' actions or omissions constituted an unconscionable commercial practice because Cendant's disclosure has the capacity to mislead consumers; whether there was intent to deceive; and whether Plaintiff suffered an actual "ascertainable loss" are clearly questions of fact for a jury to answer. *See Union Ink Co., Inc. v. AT & T Corp.*, 352 N.J.Super. 617, 645, 801 A.2d 361 (2002) (noting that "[w]hether an advertisement is misleading presents a question of fact in most cases.") Even by Plaintiffs' own admission "there is clearly a question of fact regarding whether Defendants' business practices are deceptive under the [NJCFA]." (Pls.' Opp'n Mem. to Defs.' Mot. for Summ. J. at 7.) Therefore, Plaintiffs' motion for partial summary judgment regarding liability under the NJCFA is denied. Further, Defendants' motion for summary judgment on this claim is also denied.

#### C. Count III: Negligent Misrepresentation

■ To prevail on an negligent misrepresentation claim, a plaintiff must prove: (1) defendant negligently made a false communications of material fact made; (2) that plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an

ascertainable loss or injury. *See H. Rosenblum, Inc. v. Adler,* 93 N.J. 324, 334, 461 A.2d 138 (1983); *Gross v. Johnson & Johnson–Merck Consumer Pharm. Co.,* 303 N.J.Super. 336, 696 A.2d 793 (App.Div.1997).

Defendants aver Plaintiff cannot demonstrate a false representation of any material fact because all relevant information was disclosed. (Defs' Summ. J. Mem. at 21.) They argue that Plaintiffs' essential premise—that Cendant failed to disclose the actual dollar amount it paid to STARS and the amount of the cost for the appraisal itself—is not material as the fact that there were two separate charges is "simply irrelevant because the undisputed evidence is that STARS performed work on the appraisal for which it may charge." (*Id.*) Further, they argue nothing was "misrepresented" to Plaintiff.

In her opposition papers, Plaintiff did not attempt to defend her negligent misrepresentation claim. Further, nowhere in the voluminous documents Plaintiff submitted to the Court does she point to a specific "false communication" made by Defendants. In fact, repeatedly in her deposition testimony Szczubelek states that she did not speak with anyone at Cendant regarding the appraisal process or the appraisal fee. (*See* Szczubelek Dep. at 24, 35, 46–47, 59.)

To defeat a motion for summary judgment, plaintiff must come forth with evidence that she can establish her *prima facie* burden. *See Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.1991) (declaring that plaintiff may not "rest upon mere allegations, general denials, or ... vague statements"). Here, Plaintiff has not. Therefore, Defendants are entitled to summary judgment on Plaintiffs' negligent misrepresentation claim.

### D. Count IV: Truth in Lending Act

Finally, Plaintiffs charge Defendants' actions violate the Truth in Lending Act ("TILA") in failing to disclose the true cost of a the mortgage loan by "falsely and fraudulently concealing the true and accurate amount of the appraisal fee." (Am.Comp. ¶ 77.) The TILA, 15 U.S.C. §§ 1601 *et seq.*,[8] mandates the disclosure of certain information in financing agreements and enforces that mandate by " 'a system of strict liability in favor of consumers who have secured financing when [the] standard[s][are] not met.' " *Griggs v. Provident Consumer Disc. Co.,* 680 F.2d 927, 930 (3d Cir.1982) (quoting *Thomka v. A.Z. Chevrolet,* 619 F.2d 246, 248 (3d Cir.1980)). The TILA "was passed primarily to aid the unsophisticated consumer so that he would not be easily misled as to the total costs of financing." *Thomka,* 619 F.2d at 248. *See also* 15 U.S.C. § 1601(a).

The TILA achieves its goals by imposing strict liability on lenders. *See* 15 U.S.C. § 1640(a). *See also Thomka,* 619 F.2d at 248. ("Enforcement is achieved in part by a system of strict liability in favor of consumers who have secured financing when this standard is not met.") Thus, reliance is not an element of a cause of action under TILA. *See Manning v. Princeton Consumer Disc. Co.,* 533 F.2d 102, 106 (3d Cir.1976). Additionally, a plaintiff does not need to show that he or she was in fact deceived or injured by substandard disclosures. *Griggs,* 680 F.2d at 930 (citing *Dzadovsky v. Lyons Ford Sales, Inc.,* 593 F.2d 538, 539 (3d Cir. 1979)). *See also Smith v. Fidelity Consumer Disc. Co.,* 898 F.2d 896, 898 (3d Cir.1990) ("[O]nce the court finds a violation [of the TILA], no matter how technical, it has no discretion with respect to liability.") (quoting *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir.1976)). Moreover, a plaintiff may not need to show actual harm, since the TILA provides for statutory damages for certain violations, in addition to actual dam-

---

**8.** The section of the TILA which expressly provides for civil relief in damages reads as follows:

Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $ 1,000; and (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court....

15 U.S.C.A. § 1640(a).

ages.[9] *Id.* Thus, the only question for the Court was whether Defendants in fact violated the TILA.

■ In her Good Faith Settlement of Costs, given to Plaintiff Szczubelek in September approximately three months before her closing, she was informed that an appraisal would cost approximately $275. According to Plaintiff, Cendant was required under the TILA to disclose on the Good Faith Settlement of Costs "each amount that is or will be paid to third persons by the creditor on the consumers behalf, together with an identification or reference to third persons." (Pls.' Summ. J. Mem. at 33). Plaintiff, unfortunately, misreads the law. In addition, as in the negligent misrepresentation claim, Plaintiff has failed to put forth any facts or arguments with regard to this allegation.

The TILA requires the lender to provide "a written itemization of the amount financed" including "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii). However, under the text of the statute, itemization is required only when there is a written request by the consumer. *See* 15 U.S.C. § 1638(a)(2)(B) (consumer has right to obtain, "upon a written request, a written itemization of the amount financed."); 12 C.F.R. § 226.18(c)(2); *Cannon,* 161 F.Supp.2d at 366. Further, regulations by the Federal Reserve implementing the TILA specifically provide that the itemization of payees for, *inter alia,* appraisers, credit reporting agencies, and issuances, may be couched in "generic or other general terms and need not be further identified." 12 C.F.R. § 226.18(c) n. 41. Moreover, the regulations *specifically* permit a mortgage lender to substitute an itemization with the Good Faith Estimate of Settlement Costs. 12 C.F.R. § 226.18(c)(1) n. 40.

Here, it is undisputed by all parties that Plaintiff Szczubelek, months before settlement, received from Cendant a Good Faith Estimate of Settlement Costs. Thus, Cendant in not listing the separate fees paid to STARS and R.A.S. did not violate the TILA. *See* 12 C.F.R. § 226.18(c) n. 41. Accordingly, Defendants' motion for summary judgment on Count IV of Plaintiffs' Complaint is granted.

## VI. *CONCLUSION*

In sum, for the reasons expressed above, class certification is inappropriate under Rule 23(b)(3). As such, Plaintiffs' motion for class certification is denied. Further, because genuine issues of material fact exists as to whether Defendants' actions violate the New Jersey Consumer Fraud Act, Plaintiffs' motion for partial summary judgment will be also be denied. Defendants' motion for summary judgement is denied in part and granted in part.

### ORDER

THIS MATTER having come before the Court on Plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23; Defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56; and Plaintiffs' cross-motion for partial summary judgement pursuant to Fed. R. Civ P. 56(c);

The Court having reviewed the record and the submissions of the parties;

For the reasons stated in the Court's opinion on this date;

IT IS on this *31st* day of March, 2003 HEREBY

ORDERED that Plaintiffs' motion for class certification is DENIED;

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is GRANTED as to Count I (Real Estate Settlement Procedures Act) as it relates to a third party mortgage fee paid to Century 21 Home First Realtors; Count III (Negligent

---

9. It is questionable, however, whether Plaintiff is even entitled to damages for the alleged violation—failure to itemize. *See Galloway v. Long Beach Mortg. Co. (In re Galloway),* 220 B.R. 236, 245 (Bankr.E.D.Pa.1998) (holding that statutory damages were unavailable under TILA to residential mortgagor who alleged that lender failed to provide her with itemization of the amount financed or of her right to received itemization) (citing 15 U.S.C. § 1640(a)).

Misrepresentation); and Count IV (Truth in Lending Act).

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgement on Count I (Real Estate Settlement Procedures Act) as it relates to the fee paid to STARS and Court II (New Jersey Consumer Fraud Act) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' cross-motion for partial summary judgment on Count II (New Jersey Consumer Fraud Act) is **DENIED.**

No costs.